(No. 67688.—

THOMAS DELGATTO *et al.*, Appellees, v. BRANDON ASSOCIATES, LTD., Appellant.

*Opinion filed September 27, 1989.*

Baker & McKenzie, of Chicago (Francis D. Morrissey, Harry J. O'Kane, Richard B. Foster III and Corinne Seither, of counsel), for appellant.

Susan E. Loggans, of Susan E. Loggans & Associates, of Chicago, for appellee Thomas Delgatto.

JUSTICE WARD delivered the opinion of the court:

The plaintiffs, Thomas L. and Ann Marie Delgatto, commenced an action in the circuit court of Cook County against Brandon Associates, Ltd., and other defendants, to recover for injuries Thomas Delgatto sustained in the renovation of a building in Chicago. At the time of the injury, he and a co-worker were assembling an air duct system to be used in the heating and air conditioning system of the building. They took a 90-inch-long piece of the ductwork system and stood it upright against an adjacent wall. The injury occurred when, as the plaintiff moved a disconnected radiator away from the wall and across the floor to clear the assembly and installation area, the ductwork fell, striking the plaintiff and knocking him into the radiator.

Count III of the complaint, the only count involved in this appeal, asserted a claim under the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*), alleging that the sole remaining defendant, Brandon Associates, Ltd., had violated the Structural Work Act in one or more of the following ways:

> "a. Failed to provide a proper support for the piece of duct work thereby rendering said duct work in an unstable position;
>
> b. Provided a scaffold, support or other mechanical contrivance, for the support of the duct work which was unstable and unsteady;
>
> c. Failed to provide a scaffold, support or other mechanical contrivance for the support of the duct work

which could have safely and adequately supported the duct work while the plaintiff was working in that area;

  d. Failed to provide the plaintiff with an adequate support, scaffold, or other mechanical contrivance which could have enabled him to avoid being hit by the duct work on the date of the accident."

The defendant's answer denied these allegations. Thereafter, on March 10, 1986, the defendant filed a motion for summary judgment directed to this count. The motion was supported by the deposition of the plaintiff. The gist of this testimony was that the duct had been on the ground where he was putting "duct mate" between the pieces of ductwork in order to join them. About five pieces had been joined when he and his co-worker stood that segment up against the wall because they had one side finished and had to turn it over to fasten the other side. He always stood elbow ductwork up like that when he worked on it, and it had never fallen in the past. He had no idea why it fell on this occasion. No one had pushed it or shoved it.

The hearing on the summary judgment motion was held on July 7 and 8. At that hearing, noting that discovery was to remain open until late August, the plaintiff requested a continuance to obtain expert affidavits. The trial judge stated that the plaintiff could earlier have made a request of the court under Rule 191(b) (107 Ill. 2d R. 191(b)) and the plaintiff's failure to do so should, in his discretion, preclude the plaintiff's being granted a continuance. The court granted summary judgment on count III for the defendant. A motion to vacate by the plaintiff supported by the affidavit of the plaintiff and of an expert, together with other material, was denied after the affidavits had been stricken for failure to comply with Rule 191(b), and the order was certified for appeal under Rule 304 (107 Ill. 2d R. 304). (All claims were not disposed of by the judgment entered.)

The appellate court reversed. (172 Ill. App. 3d 424.) It held that the ground of the defendant's motion was that it had no duty to provide the plaintiff with a device to either support the ductwork itself, or to prevent the ductwork from striking the plaintiff, and for that reason was, in reality, "a motion for judgment on the pleadings masquerading as one for summary judgment." Treating the motion as a motion with respect to pleadings under section 2—615 of the Code of Civil Procedure, the court held that the allegation of a failure to provide stays or supports to prevent the piece of ductwork from falling alleged a violation of the Structural Work Act. We granted the defendant's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The defendant argues that the motion for summary judgment was a procedurally appropriate motion, that it was not error for the trial court to deny plaintiff's motion for a continuance to obtain expert testimony and to deny the plaintiff's subsequent motion to vacate, and that, substantively, it was established that the plaintiff may not recover under the Structural Work Act because the defendant had no duty under that act to provide a support or stay for the ductwork that fell and injured the plaintiff. These procedural and substantive contentions are logically interrelated and, as will be seen, impact upon each other.

The first question is the propriety of the motion for summary judgment. This aspect of the case requires a consideration of the distinction between a motion under section 2—615 of the Code of Civil Procedure, that is, a motion with respect to pleadings, and a motion for summary judgment under section 2—1005 of the Code. The appellate court, in holding that a section 2—615 motion was the proper motion, referred to that motion as a motion for judgment on the pleadings. That was an inaccuracy, but one not material here. At common law, a de-

murrer was proper to challenge the legal validity of a pleading, while a motion for judgment on the pleadings was based on admissions in an opposing party's pleadings. There were no admissions here. Our Code of Civil Procedure was drafted with these distinctions in mind. The motion to strike and dismiss is the statutory substitute for the demurrer, while the motion for judgment on the pleadings retained its common law function. Accordingly, if a section 2—615 motion was the proper motion to raise the inapplicability of the Structural Work Act under the facts of this case, the appropriate section 2—615 motion would be one to strike and dismiss. See C. Clark, Code Pleading 554-56 (2d ed. 1947).

The appropriate roles of a section 2—615 motion and a motion for summary judgment under section 2—1005 of the Code were explained by this court in *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, a case where the defendants filed a document termed a motion to dismiss and for summary judgment. In that case, this court said:

> "The Civil Practice Act, however, establishes two distinct procedures. *** To combine an inquiry into whether a pleading is sufficient to state a cause of action with an examination which almost necessarily assumes that a cause of action has been stated and proceeds to determine whether there are any material issues of fact to be tried is likely to confuse both the parties and the court. *** The defendants in this case should have first challenged the legal sufficiency of the complaint. When, and only when, a legally sufficient cause of action had been stated should the court have entertained the motions for summary judgment and considered the affidavits filed in support thereof." 57 Ill. 2d at 406.

To restate, a section 2—615 motion is used when a party challenges whether a pleading is legally valid or sustainable, *i.e.*, whether even if all the facts alleged by the pleader are true, the pleader has a valid cause of

action or defense. A motion for summary judgment is used when the pleader "assumes that a cause of action has been stated and proceeds to determine whether there are any material issues of fact to be tried." (*Janes*, 57 Ill. 2d at 406.) Therefore, if the issue raised by the defendant was an asserted defect in the pleadings, the appellate court properly treated the motion as one under section 2—615. If, however, the defendant conceded that the pleadings were valid, but was contending the additional facts contained in the plaintiff's deposition left no material issue of fact and were the reason that the count should be dismissed, the defendant properly invoked the summary judgment procedure. To determine which of these situations was applicable, it is necessary to consider the substantive issues.

The Structural Work Act provides:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm, or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1987, ch. 48, par. 60.

The Act may be violated by a failure to provide a needed scaffold, hoist, crane, stay, ladder, support, or other mechanical contrivance, as well as by providing a defective one. (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445.) Thus, the issue here is whether the failure to provide stays or supports to support the ductwork that struck the plaintiff is a violation of the Act. The appellate court noted a conflict in the appellate court deci-

sions over the issue of whether devices designed to support people are the only devices covered by the Act (see *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024; *Carlson v. Moline Board of Education* (1984), 124 Ill. App. 3d 967; *Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535), or whether devices designed to support tools and materials are also covered (see *Urman v. Walter* (1981), 101 Ill. App. 3d 1085; *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125; *Wellston v. Levy Organization, Inc.* (1988), 175 Ill. App. 3d 301). After reasoning that the second line of decisions is correct, the court reversed the summary judgment on what it perceived was the basis of this court's decision in *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146.

The *McNellis* decision involved a situation where the injury occurred when a 10-ton pedestal fell and fatally injured decedent as he was unloading it from a gondola car. The pedestal was part of a generator which had been built for Commonwealth Edison by Combustion Engineering, and Combustion Engineering had shipped it by train to the construction storage site about one-half mile from the building site. Although there were two cranes in the vicinity, the crew decided to proceed without them. The pedestal was not installed until approximately six months later. There was testimony that a crane should have been used to hold the pedestal in place. In this court, only two issues were considered: whether the work of unloading the train car was Structural Work Act activity, *i.e.*, whether it was work which involved "the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure," and whether the defendant was in charge of the work. In determining that the work was Structural Work Act activity, the appellate court had relied on a written agreement between Commonwealth Edison and

Combustion Engineering that the task of erecting the generator involved unloading and storage. Commonwealth Edison's argument in this court was that unloading a piece of equipment for storage one-half mile from the building site is not "use in the erection of any building or structure." This court disagreed. Thus, because of the written agreement of the parties that the work was within the Act the question of whether the failure to employ a crane to support the pedestal constituted a violation of the Act was not directly passed on by this court. Even if we were to treat the *McNellis* decision as establishing that the failure to provide a support for tools and/or materials can constitute a violation of the Act, *McNellis* is distinguishable and the Structural Work Act is inapplicable here for two reasons.

First, while the failure to provide a scaffold or support can constitute a violation of the Act, there is a difference in the proof necessary to establish a violation based on a failure to provide a device covered by the Act in comparison to a case where a defective device is provided. In *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, the decision in which this court held that the failure to provide a device covered by the Act could constitute a violation of the Act, the case had been dismissed in the trial court on the pleadings because, in a bill of particulars, the plaintiff admitted that no scaffold had been provided. Accordingly, the issue was whether the failure to provide such a device could ever constitute a violation of the Act, and the court, with two justices dissenting, held that it could. Because of the procedural posture of the case, the court did not consider the circumstances where a failure to provide a device would be a violation.

While the defective nature of a device which is provided for support can often be established by the facts of the accident, a party presenting a case based on the failure to provide a needed support must establish that a

party in charge of the work exercising due care would provide one. Absent evidence of this nature, whenever a construction worker is hit by a falling object there would be liability based on the failure to secure the object. Thus, in *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, there was testimony that a crane should have been used to hold the pedestal in place. Similarly, in *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, where the plaintiff was injured when a roof truss fell on him, there was uncontradicted evidence of an industry practice to provide cribbing for the roof trusses prior to their installation. Because there was no evidence of an industry practice to provide supports or stays for ductwork that was being assembled, neither *McNellis v. Combustion Engineering, Inc.* nor *Urman v. Walker* supports the plaintiff's position. *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, the other case relied on here by the appellate court, did not involve a failure to use a support device, but arose from a situation where the injury resulted when material fell from a support device that was provided.

Another line of authority also establishes that the Structural Work Act is inapplicable to the facts of this case. While comparative negligence of the worker and assumption of risk do not apply to a cause of action under the Act, there is no liability when the claimed need for a scaffold, support or shoring arises for the first time by the voluntary act of the worker. In *Swendsen v. Brighton Building & Maintenance Co.* (1976), 41 Ill. App. 3d 930, a bridge construction worker was injured when he fell from some steel piling that he was stacking on shore after pulling them out of the river. In holding that the Structural Work Act was inapplicable, the court said:

> "Plaintiff failed to establish that he had no alternative except to walk on the piling to get from one end to the

other. \*\*\* The fact that a worker chooses to walk on a stack of material instead of around it does not convert the materials into a scaffold within the meaning of the Act. To hold otherwise, would permit an employee to stand or walk wherever he wishes and, if he is off the ground, his choice becomes a scaffold." 41 Ill. App. 3d at 933.

We follow this reasoning. In this case, the worker's deposition stated that, in accord with his custom, he elected to stand the five pieces of ductwork that had been joined in order to fasten the other side. This voluntary act on his part cannot impose a duty on the defendant to provide a stay or support for the ductwork. The defendant did not know where a support to hold the semicompleted ductwork would be required; indeed it did not know that the ductwork would be stood up against the wall.

Having determined the proper resolution of the Structural Work Act issues on this record, we return to the procedural considerations. Because the failure to provide a proper support for the piece of ductwork, as alleged in the complaint, could assert a violation of the Structural Work Act (e.g., where industry practice or due care would require a support), and because the proper resolution of the motion depended on the deposition testimony of the plaintiff that it was his decision to prop the ductwork against the wall, that he always had done so, and that there had never been a prior accident arising from the practice, the motion was properly one under section 2—1005 and not, as the appellate court said, a section 2—615 motion that was improperly raised under section 2—1005.

This determination makes it necessary that we consider the propriety of the trial court's rulings on the procedure followed in resolving the motion for a summary judgment. Two issues are thereby raised: the propriety

of the ruling denying the plaintiff's motion for a continuance to obtain expert testimony, and the propriety of the ruling denying the motion for reconsideration and striking the material submitted in support of that motion.

The motion for a continuance to obtain expert testimony was properly denied. The motion had been filed on March 10, 1986, and it was not called for a hearing until July 7, 1986. Thus, plaintiff had almost four months in which to obtain whatever materials he needed to oppose the motion. No showing was made of any reason why testimony of this nature could not have been obtained earlier, nor did plaintiff invoke Supreme Court Rule 191(b) (107 Ill. 2d R. 191(b)), which permits relief, including a continuance to obtain needed affidavits, if an affidavit cannot be obtained from a witness because that witness is hostile or unavailable. The discretion inherent in the trial court in the determination of motions for continuances was not abused. See *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294.

The motion for reconsideration was properly denied for similar reasons. The submission of a new matter on such a motion after a motion for summary judgment has been granted lies in the discretion of the trial court (*In re Estate of Garbalinski* (1983), 120 Ill. App. 3d 767), but it should not be allowed in the absence of a reasonable explanation of why it was not available at the time of the original hearing (see *Rahill Corp. v. Urbanski* (1984), 123 Ill. App. 3d 769; *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228). In the absence of any such valid explanation, there was no reason to change the ruling.

For these reasons, the trial court properly granted the motion for summary judgment.

*Circuit court judgment affirmed;*
*appellate court judgment reversed.*