ROBERT E. BYRNES, Plaintiff-Appellant, v. PAUL FISCELLA *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—90—1341

Opinion filed August 2, 1991.

O'Shea & Quan, of Forest Park (John J. Quan, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Helaine Wachs Heydemann and Ruth E. VanDemark, of counsel), for appellees.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff-appellant Robert E. Byrnes appeals from both the entry of summary judgment against him and in favor of defendants-appellees Dr. Paul Fiscella and Dr. E. J. McLeod and the imposition and failure to vacate a discovery sanction limiting plaintiff to one named expert witness. Plaintiff's complaint alleged medical negligence on the part of defendants. We affirm both the granting of summary judgment and the imposition of and refusal to vacate the discovery sanction. As the disposition of this appeal turns on the particular facts, a somewhat lengthy recitation is necessary.

Plaintiff filed suit against defendants, as well as against Dr. Eugene Dolehide (individually and doing business as Medicine and Surgery S.C.) and the Sisters of St. Mary as the owner of St. Francis Hospital. In count I of his complaint, plaintiff alleged that he suffered from diabetes-mellitus, which Dr. Dolehide had treated since prior to 1981. In 1983, Dolehide treated a sore on plaintiff's left foot. In January of 1984, plaintiff was referred to defendant McLeod, a podiatrist. According to the complaint, defendant was treated by an agent of McLeod, defendant Fiscella, on January 12, 1984, and January 21, 1984. Plaintiff alleged that Fiscella was negligent in that Fiscella "treated plaintiff's left foot *** leaving the contaminated foot open and using the same instrument as used on the contaminated left foot opened [on] plaintiff's right toe." Resultingly, according to plaintiff, his right big toe became infected and ultimately had to be amputated.

Count II of plaintiff's original complaint against defendants was based on a theory of *res ipsa loquitur.* Counts III and IV were against codefendants Dolehide and the hospital. In January of 1986, Judge Odas Nicholson dismissed count II of the original complaint, the *res ipsa loquitur* count. Plaintiff was given leave to file an amended complaint by February 26, 1986. At a motion for sanctions hearing on March 31, 1988, plaintiff sought and obtained leave to file an amended complaint, which plaintiff did, essentially realleging counts I, III and IV of the original complaint. Additionally, the amended complaint alleged:

"[T]he plaintiff has received and in the future will continue to receive medical and hospital care and treatment furnished by the United States of America. The plaintiff, for the sole use and benefit of the United States of America under provisions of 42 United States Code 2651—2653, and with its express consent, asserts a claim for the reasonable value of said past and future care and treatment."

After defendant Fiscella appeared and answered, he served plaintiff with interrogatories and a Rule 214 (107 Ill. 2d R. 214) notice. On December 6, 1985, the case appeared at the progress call. Judge Thomas E. Hoffman entered an order directing plaintiff to respond to all written discovery within 28 days. According to defendants, Fiscella's interrogatories were never answered. (Plaintiff has, however, supplemented the record with a file-stamped, though unsigned, copy of answers to Fiscella's interrogatories.) In response to a like interrogatory from a codefendant, plaintiff answered on January 17, 1986 (42 days after the entry of the order by Judge Hoffman), that at the present, plaintiff did not have a medical expert, but that at the time investigation continued. (The unsigned answer to Fiscella's interrogatories contains the same answer.)

On January 30, 1987, plaintiff appeared for his deposition. The most pertinent information from the deposition for the purposes of resolving the issues confronting this court is that plaintiff testified, consistent with his theory of negligence, that Fiscella scraped his right toe with the same instrument that Fiscella had used to treat plaintiff's left foot. Plaintiff also indicated that Dr. Dolehide, when plaintiff subsequently spoke with Dolehide, thought that the left foot had been infected at the time Fiscella treated plaintiff's feet.

On June 10, 1987, Judge John T. Keleher entered a discovery supervision order setting a final pretrial date for June 9, 1988. Judge Keleher at this time ordered that all written discovery be completed by August 31, 1987, and that the depositions of the parties experts and nonexperts was to be completed by October 15, 1987. Plaintiff was ordered to identify his "testifying expert witnesses" by November 30, 1987, and the deposition of plaintiff's testifying expert was to take place by January 31, 1988. Defendants were to disclose their testifying experts by March 15, 1988. Discovery was to be completed by May 31, 1988.

Defendant Fiscella served plaintiff's attorney with Rule 220 interrogatories on December 3, 1987. A pretrial was held on December 2, 1988, at which time Judge Keleher entered another discovery order. This order (1) required plaintiff to identify his "expert witness within

90 days and [to] produce same before the next pretrial," (2) suspended defendants' discovery schedule "in regard to expert testimony," (3) entered and continued a motion to dismiss until the next pretrial, (4) continued the pretrial until June 9, 1989, and (5) granted defendants leave to present the motion to dismiss on an emergency basis at any time "if plaintiff fails to comply with this order."

On March 13, 1989, the hospital noticed a motion to dismiss for March 28, 1989, before Judge Myron T. Gomberg. The motion reiterated the terms of the December 2, 1988, discovery order, alleging plaintiff's noncompliance with same. At the hearing on March 28, 1989, plaintiff was given leave to file responses to the motions *instanter*, and in response to the motions, plaintiff stated that plaintiff's counsel had been in communication with the Veterans Administration (VA) attorneys with regards to procuring an expert. Plaintiff advised the court of the *quid pro quo* regarding the government's claim between plaintiff and the government, namely that plaintiff's counsel would provide legal representation and that the VA would provide an expert witness. Plaintiff told the court that an expert's deposition could be scheduled within two weeks, and Judge Gomberg ordered the matter continued to April 11, 1989, ordering the parties, as well as a VA attorney to whom plaintiff's counsel had spoken to appear.

The hearing on the 11th of April occurred before Judge Michael Zissman. There, a VA attorney, Christopher Ingram, told the court that plaintiff had been provided with the name of a doctor plaintiff could contact, and that within 30 to 45 days experts could be provided plaintiff. Plaintiff's counsel advised the court that he had been supplied the name of one doctor and that he expected to be provided the names of other experts, whom plaintiff would contact, within the week. Judge Zissman then entered the following order:

> "Plaintiff is given a *FINAL EXTENSION* of time to disclose all experts and Answer Rule 220 Interrogatories as to all experts, to 56 days, to and including June 6, 1989. It is further ordered that defendants['] motions are continued for compliance hearing to June 9, 1989 at 2:30 p.m. without further notice." (Emphasis in original.)

Next, on June 9, 1989, Judge Gomberg presided at the hearing on the continued motions, as well as on a motion for summary judgment the hospital had filed. Plaintiff had not complied with the April 11, 1989, order to disclose his expert. Plaintiff's counsel advised the court that he had spoken to one expert the VA had provided, and a meeting was set with that expert the next week. The other VA doctors had not been produced. Plaintiff's counsel also noted that he was trying to

withdraw from the case for health reasons (although plaintiff's counsel never did and in fact continues to represent plaintiff on appeal), that plaintiff was going to employ a private expert, and that plaintiff was requesting "as much time as humanly possible."

Judge Gomberg ruled that he would give the plaintiff "one more time," but that sanctions would be appropriate. Under Rules 219 (c)(ii), (c)(iii), (c)(iv) (107 Ill. 2d Rules 219 (c)(ii), (c)(iii), (c)(iv)), Judge Gomberg ordered that plaintiff be barred from filing any pleading, maintaining any claim, or presenting a witness relating to the issue to which his failure to name an expert related. The matter was again continued to June 16, 1989, "to determine whether plaintiff is in a position to name an expert."

On June 16, 1989, plaintiff's counsel stated that he had met with Dr. Rubinstein at the VA Hospital and had tendered Dr. Rubinstein's name to defendants. Plaintiff's counsel promised that Rule 220 (107 Ill. 2d R. 220) interrogatories would be answered and Rubinstein's deposition would be taken within three weeks. Once again, an order was entered continuing the matter. Plaintiff was given until June 30, 1989, to file answers to the Rule 220s and comply with other outstanding production requests. At the close of the hearing, the hospital's attorney requested that plaintiff be limited to Dr. Rubinstein as an expert witness, and the court indicated that this should be so and that this should be included in the order. Plaintiff's counsel did not object to this ruling. The order, which was prepared by Dr. Fiscella's counsel, did not, however, include this limiting directive. The matter was put over until July 7 for the purpose of further monitoring plaintiff's compliance.

On July 7, 1989, plaintiff filed his answers to the hospital's supplemental interrogatories. In response to the interrogatory pertaining to the expert retained to render an opinion at trial, plaintiff averred that none had been retained at the time. The answer indicated that Dr. David Rubinstein from the VA had orally agreed to render an opinion at trial. In response to the interrogatory asking for plaintiff's expert's opinions and conclusions, plaintiff averred:

> "Plaintiff does not have a written report from Dr. Rubinstein. The undersigned [plaintiff's attorney] on information and belief states that based on Dr. Rubinstein's training and experience and Dr. Rubinstein's review of the Plaintiff's deposition, that the treatment afforded Plaintiff by Dr. Fiscella might have or could have caused the condition that resulted in the amputation of the toe."

Plaintiff further stated in answer to interrogatory that he learned of the substance of Dr. Rubinstein's opinion on June 13, 1989.

Judge Thomas Quinn presided at the compliance hearing on July 7, 1989. Plaintiff's attorney argued that Dr. Rubinstein was not a retained expert and therefore not subject to Rule 220 requirements. Plaintiff's attorney further indicated that he had not spoken to Dr. Rubinstein since June 13 and had not obtained a written report from him. Judge Quinn struck the answer to interrogatory which stated Dr. Rubinstein's opinion and told plaintiff "I can still require you to submit proper answers to 220 interrogatories, and if [Dr. Rubinstein] is not going to cooperate in that regard, you've got to get another expert." Plaintiff was then given an additional 25 days to file an amended answer to interrogatory and the matter was continued until August 4, 1989.

Plaintiff answered the interrogatory of the hospital relating to Rubinstein's opinions and conclusions with respect to whether the standard of care had been deviated from. The answer, signed and attested to by Dr. Rubinstein, read as follows:

"I have reviewed the Deposition of the Plaintiff Robert E. Byrnes. According to Mr. Byrnes following treatment on the great right toe by Dr. Fiscella, suffered pain, bleeding, discharge, swelling and discoloration of his great right toe. The Plaintiff's toe had been bandaged by Dr. Fiscella on January 21, 1984, following the scraping and buffing of a callous under his toe. These symptoms indicate that the circulation of blood to said toe may have been cut off which could lead to gangrene.

It is my opinion that assuming the truth of the foregoing facts by Mr. Byrnes that Dr. Fiscella's bandaging of the right great toe may have been excessively tight causing the loss of circulation to that area and resulting in the subsequent infection/gangrene in the great right toe."

Next, Judge Angelo D. Mistretta presided at the August 4, 1989, compliance hearing. The history of the discovery-taking in the case was recounted for Judge Mistretta. Plaintiff's counsel recounted his difficulty with the "great bureaucracy" of the Veterans Administration and requested more time to get a different expert. Judge Mistretta, however, ordered that plaintiff be limited to Dr. Rubinstein as his expert and ordered that plaintiff produce Dr. Rubinstein for deposition before August 25, 1989. While plaintiff's counsel asked for more time early in the hearing, he did not object to the entry of the order limiting plaintiff to the use of Dr. Rubinstein. Status was set for September 15, 1989.

Rubinstein's deposition was taken on August 29, 1989. He testified that he was first contacted with respect to the instant case in April or May of 1989. After reviewing the file, Rubinstein was told that he might be called to testify in the lawsuit. Rubinstein also reviewed St. Francis hospital records pertaining to plaintiff's case. Rubinstein was not given the records of the defendant-doctors to review, however. Rubinstein confirmed that the supplemental interrogatory answer contained his opinions in the case, based solely on plaintiff's deposition. Dr. Rubinstein further testified that it was "possible"—and not "more probably true than not"—that Dr. Fiscella's bandaging of plaintiff's toe may have cut off the circulation to the toe and led to gangrene. Plaintiff's gangrene could have been caused by diabetes that was out of control or possibly poor foot hygiene. Observing that it was "too speculative," Rubinstein specifically denied that it was his opinion to a reasonable degree of medical and podiatric certainty that circulation or circulatory problems caused or contributed to plaintiff's gangrene.

On September 15, 1989, Judge Thomas Quinn entered and continued the still-pending motion of the hospital to dismiss and Dr. Fiscella's motion for sanctions. Judge Quinn observed that, "If plaintiff seeks to utilize another expert, plaintiff must vacate the order of August 4, 1989[,] limiting plaintiff to one expert, Dr. Rubinstein[,] by October 25, 1989."

On September 21, 1989, Dr. Rubinstein's deposition was resumed. At this time, Rubinstein testified that he did not believe that the buffing of plaintiff's toe could lead to infection. Rubinstein further stated that he would not consider using the same instrument on the left foot and then right foot a deviation from the standard of care. Rubinstein also indicated that it was too speculative to say that using the same instrument on both feet caused the infection of the right toe. Rubinstein further testified that he could not state to a reasonable degree of podiatric certainty that the big toe was too tightly wrapped. Rubinstein further stated about Dr. Fiscella's care of plaintiff, "In my opinion, I cannot say that Dr. Fiscella was negligent in his care of [plaintiff]."

Dr. Fiscella filed a motion for summary judgment on October 25, 1989. Plaintiff's attorney acknowledged that he had not had the order of Judge Mistretta limiting plaintiff to Dr. Rubinstein as an expert vacated. Judge Quinn granted the hospital's summary judgment motion. Also, Dr. McLeod was allowed to join in Dr. Fiscella's motion for summary judgment, and the motions were briefed. During the briefing

time, on November 13, 1989, plaintiff was granted leave to take Dr. Fiscella's deposition within 30 days.

Defendant Fiscella's deposition was taken on December 18, 1989. The pertinent testimony from that deposition is that while Fiscella would consider it a deviation from the standard of care to use the same instrument on a different foot as had been used on an infected foot, Fiscella denied that plaintiff's left foot was infected when plaintiff was treated. Fiscella did acknowledge that he had used the same instrument on both feet.

The hearing on defendants' motion for summary judgment was initially scheduled for March 6, 1990. At that time, plaintiff's counsel informed Judge Quinn that he had attempted to see Judge Mistretta about having the limiting order vacated, but that Judge Mistretta would not be able to hear the motion until March 26, 1990. Plaintiff's counsel also indicated that he had spoken to a doctor who was willing to testify that plaintiff's foot was infected. Plaintiff's counsel indicated that the question was whether the infection was within the realm of common knowledge or not. Judge Quinn continued the matter until April 9, 1990.

On March 9, 1990, plaintiff served the parties with a motion to vacate the limiting order. In the motion, plaintiff stated that Dr. William F. Walsh, a doctor unconnected with the VA, had "orally advised [plaintiff's counsel] that plaintiff, according to the medical records had an infected left toe and that utilizing a scalpel on the infected toe and another area would be medical malpractice." On March 26, Judge Mistretta denied plaintiff's motion to vacate. The next day, plaintiff filed a motion to reconsider the denial of the motion to vacate. This time, plaintiff supported the motion with an affidavit of Dr. Walsh. The Walsh affidavit averred that Dr. Fiscella's debriding of the infected left foot and the noninfected right foot caused the infection of plaintiff's right great toe, which resulted in the subsequent amputation of the toe. On April 2, 1990, Judge Mistretta entered an order denying plaintiff's motion to reconsider the denial of plaintiff's motion to vacate.

On April 9, 1990, Judge Quinn, refused to vacate, according to him, "an order Judge Mistretta refused to vacate on two occasions." Likewise, he refused to consider the Walsh affidavit, as plaintiff had been limited to Dr. Rubinstein as an expert. Judge Quinn then granted defendants' motion for summary judgment, noting that the statements of Dr. Dolehide suggesting infection were hearsay, and that even if such statements were considered, plaintiff had failed to

establish that Dr. Fiscella's alleged use of the scalpel caused plaintiff injury and the resultant amputation of the toe.

The first issue we address is whether the trial court abused its discretion in imposing the Rule 220 sanction limiting plaintiff to Dr. Rubinstein as an expert witness.

Supreme Court Rule 220(b)(1) provides in relevant part:

"[T]he identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. In any event, as to all expert witnesses not previously disclosed, the trial court, on its own motion, or on the motion of any party after the first pretrial conference, shall enter an order scheduling the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed. *** All dates set by the trial court shall be chosen to ensure that discovery regarding such expert witnesses will be completed not later than 60 days before the trial will commence. *** Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." 107 Ill. 2d R. 220(b).

The court in *Mitchell v. Wayne Corp.* (1989), 180 Ill. App. 3d 796, 800-01, 523 N.E.2d 241, observed:

"The purpose of Rule 220 is to facilitate trial preparation by eliminating last-minute disclosure of expert witnesses. [Citation.] The reason for Rule 220 is that adequate trial preparation requires timely disclosure of expert witnesses. Time is needed prior to trial to investigate and discuss the substance of the testimony of an opponent's expert with one's own experts in order to prepare for cross-examination. [Citation.] Rule 220 was therefore adopted in an attempt to establish a uniform, but not inflexible, framework for the timely revelation of the identity of expert witnesses and the subject matter of their testimony. [Citation.] The rule authorizes the establishment of deadlines and requires that the parties act in good faith to ascertain the identity of expert witnesses they reasonably anticipate using. [Citations.]"

The use of discovery sanctions as a general deterrent "provides a strong incentive for all litigants to fully and accurately comply with discovery rules." (*Mitchell*, 180 Ill. App. 3d at 802.) The decision to

impose sanctions under Rule 220 is within the sound discretion of the trial judge and will not be interfered with absent a clear showing of abuse. *Castro v. South Chicago Community Hospital* (1988), 166 Ill. App. 3d 479, 482, 519 N.E.2d 1069.

In this case, Judge Angelo Mistretta entered the order which limited plaintiff to Dr. Rubinstein as an expert witness after Rubinstein had been disclosed to defendants. Judge Gomberg had previously indicated, on June 16, 1989, that plaintiff should be limited to Dr. Rubinstein due to plaintiff's repeated violation of discovery orders, although this had not been included in the written order at that time. Plaintiff argues that both the imposition of the sanction in the first instance and Judge Mistretta's refusal to vacate or modify the imposition of the sanction were abuses of discretion. Plaintiff argues that his previous noncompliance with court directives to disclose her expert witness was "not unreasonable." Specifically, plaintiff argues that his failure to comply with court orders was understandable, and justifiable, due to plaintiff's reliance on the VA that the VA would supply an adequate expert(s). Plaintiff emphasizes that he had no control over the VA's procurement of experts, and notes that the case was not particularly close to going to trial.

In support of his claim that he had a legitimate reason for his noncompliance, plaintiff cites *Vortanz v. Elmhurst Memorial Hospital* (1989), 179 Ill. App. 3d 584, 534 N.E.2d 625. In *Vortanz*, a case involving Supreme Court Rule 219(c), the trial court dismissed plaintiff's case for plaintiff's failure to comply with discovery orders. Here, of course, the sanction only limited plaintiff to his disclosed expert. The sanction here was less drastic than the sanction imposed in *Vortanz*, and in this case the substance of Dr. Rubinstein's testimony was not known when the limiting sanction was imposed, as Rubinstein's deposition had not been taken. The most severe nature of the sanction was noted in *Vortanz*. (179 Ill. App. 3d at 590 ("[S]ince the striking of pleadings and entry of judgment against a party as a result of the violation of a discovery rule or order is the most severe sanction that a court can impose pursuant to Rule 219(c), it is only appropriate in those instances where the conduct of the offending party shows a deliberate, contumacious, or unwarranted disregard for the court's authority").) Moreover, in *Vortanz*, the court held that the dismissal order was void for lack of notice to plaintiff (179 Ill. App. 3d at 589), and the court held that plaintiff established the existence of a legitimate excuse for the violation of the order, which in *Vortanz* was the nonappearance at a single deposition. (179 Ill. App. 3d at 591.) Here, plaintiff had violated numerous orders requiring disclosure of his ex-

pert at the time the sanction was imposed, and under the circumstances (as will be discussed), plaintiff did not establish a legitimate excuse.

Plaintiff also implies that he lacked the ability to comply with the order, citing *Applegate v. Seaborn* (1985), 132 Ill. App. 3d 473, 477 N.E.2d 74, for the proposition that Judge Mistretta's order was unwarranted. In *Applegate*, however, a nonparty had disposed of evidence in the case, and plaintiff's counsel never had control over the disposed-of evidence. Thus, the trial court's sanction under Rule 219 was unwarranted. (132 Ill. App. 3d at 474-75.) In this case, while plaintiff may not have "controlled" the VA, clearly plaintiff had the ability to retain his own expert, which plaintiff had been warned to do prior to the imposition of the limiting sanction, and plaintiff in fact subsequently did.

More persuasive to resolution of the issues before us are the cases cited by defendants. In *Castro*, for instance, the court affirmed the sanction of barring the testimony of an expert witness. There the plaintiff had repeatedly failed to disclose the identity of her expert. Plaintiff was given leave to identify her expert, and when plaintiff did so, it turned out that the expert was uncritical of defendants. The court, detailing plaintiff's noncompliance with numerous discovery requests and orders, affirmed the sanction of refusal to allow additional expert testimony, and affirmed the granting of summary judgment in defendant's favor. *Castro*, 166 Ill. App. 3d at 485. Accord *James v. Yasunga* (1987), 157 Ill. App. 3d 450, 456-57, 510 N.E.2d 531.

In short, in this case, by the time Judge Mistretta entered the sanction limiting plaintiff to Dr. Rubinstein as a witness, several explicit directives that plaintiff identify his expert had been made. Interrogatory requests had been served and unanswered and insufficiently answered. Plaintiff had been warned that sanctions were imminent and that he might need to retain a private expert. In fact, some two months before the entry of the order, plaintiff's counsel indicated that he intended to retain a private expert. Some 6½ weeks prior to Judge Mistretta's limiting order, Judge Gomberg had indicated the appropriateness of the limiting sanction. On that occasion, while the limiting sanction was not included in the written order, plaintiff's counsel did not object to the limiting sanction. The period of plaintiff's noncompliance with the discovery schedule ranged from Judge Keleher's initial order in June of 1987 that plaintiff's expert be disclosed in November of 1987, to the entry of the limiting order in August of 1989. Plaintiff's attempt to obtain a free expert witness, while understandable, is not a sufficient excuse for plaintiff's repeated failure to com-

ply with several different judges' discovery orders over the above period. The record reveals further that plaintiff was given numerous extensions and accommodations. It is apparent that were the courts to sanction repeated noncompliance with discovery orders such as occurred in this case, the purpose of Rule 220 would be eviscerated. Under the circumstances, Judge Mistretta's sanction limiting plaintiff to Dr. Rubinstein was just, given plaintiff's lack of reasonableness in effectuating compliance with the discovery schedule. Therefore, we hold that the entry of the sanction not an abuse of discretion.

■ We next address whether it was error for the trial court to refuse to vacate the sanction which limited plaintiff to Dr. Rubinstein. Plaintiff has cited *Cometo v. Foster McGaw Hospital* (1988), 167 Ill. App. 3d 1023, 522 N.E.2d 117, in support of his argument that Judge Mistretta should have granted plaintiff's motion to vacate or reconsider the denial of the motion to reconsider. *Cometo*, however, is factually distinguishable. There, the plaintiff had in fact complied with a second discovery order in identifying plaintiff's expert—only the expert initially refused to testify. Then, within a month after the sanctions were imposed (which barred plaintiff from calling an expert), the previously disclosed expert did testify. In response to a motion for summary judgment, plaintiff proffered the expert's affidavit, and the *Cometo* court held that this change in circumstances as well as a continuation of the trial date constituted a "sufficient change in circumstances from those that existed when the Rule 220 sanctions were imposed to require the trial court, in the interests of justice, to reopen discovery and reject the harsh penalty of summary judgment." (*Cometo*, 167 Ill. App. 3d at 1029.) Here, there was no initial noncompliance of a disclosed expert; rather, there is reflected willingness on the part of Dr. Rubinstein to testify—only Dr. Rubinstein did not criticize defendants.

Moreover, when the discovery was sought to be reopened in *Cometo*, the plaintiff tendered the affidavit testimony. Here, when plaintiff attempted to vacate the limiting order, no affidavit or other testimony was supplied Judge Mistretta. It was only upon the filing of a motion to reconsider that plaintiff's subsequent expert's affidavit was offered. In considering the issue of the propriety of vacating a judgment upon a motion to reconsider in a related context, our supreme court has observed that "[t]he submission of new matter on such a motion *** lies in the discretion of the trial court [citation], but it should not be allowed in the absence of a reasonable explanation of why it was not available at the time of the original hearing [citations]. In the absence of any such valid explanation, there was no reason to

change the ruling." (*Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 195, 545 N.E.2d 649.) Here, the affidavit testimony of the subsequent expert which was tendered with the motion to reconsider was, according to the motion to vacate, known to plaintiff at the time of the hearing on the motion to vacate. Plaintiff offered no reasonable explanation for its prior absence. Thus, even if it would have been proper for the trial judge to vacate the sanction order if the original motion had been supported by affidavit, it was not improper for the court to deny the subsequent motion to reconsider.

In sum, the circumstances in this case were not sufficient to require the trial court to vacate the sanction imposed, and Judge Mistretta's failure to do so was not an abuse of discretion.

■ Finally, we address whether Judge Quinn erred in granting defendants' motion for summary judgment. Plaintiff requests that we reverse the granting of summary judgment in defendants' favor, so that the affidavit of plaintiff's subsequent expert, Dr. Walsh may be considered. Plaintiff, however, concedes that he needed an expert witness in order to defeat the summary judgment motion. Plaintiff makes no argument that it was error for Judge Quinn to fail to review the order of Judge Mistretta. Nor does plaintiff argue that a question of fact existed at the hearing on defendants' motion. Since it is undisputed that plaintiff was unable to prove, absent further expert testimony, the essential elements of his case, we hold that the granting of summary judgment was proper.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and EGAN, JJ., concur.