308

JOSEPH KONIARSKI, Plaintiff-Appellant, v. EDWARD C. KVETKO *et al.*, Defendants-Appellees.

First District (6th Division) No. 1—91—0017

Opinion filed August 28, 1992.

Susan E. Loggans and David S. Adduce, both of Susan E. Loggans & Associates, of Chicago, for appellant.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Lori E. Iwan, and Lloyd E. Williams, Jr., of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Joseph Koniarski, brought a four-count complaint against defendants, Edward Kvetko and Countryside Rebuilders, Inc., alleging violations of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*) and negligence. Plaintiff's first amended complaint alleged that he sustained injuries when he slipped and fell from a roof on the construction site. The court granted defendants' motion for summary judgment on all counts, and plaintiff appeals from that order.

The following facts were adduced in the depositions and affidavits: On December 27, 1984, plaintiff, an electrician, fell from the roof of a house under construction in Long Grove, Illinois. Defendant Kvetko owned the house and was president and sole shareholder of defendant Countryside. In its answer, Countryside admitted that it was the general contractor on the construction site. Kvetko hired plaintiff as the electrical contractor, and plaintiff hired several electricians to work for him. Defendants paid plaintiff for all electrical work performed, and plaintiff supervised and paid the other electricians. Plaintiff determined his own work schedule, ordered all electrical supplies, and brought his own tools and ladders.

Plaintiff testified at his deposition that on the day of the accident, Kvetko instructed him to install lights under the soffit and told him that "it had to be done today." Plaintiff asked Kvetko to move the scaffold for him, but Kvetko refused because he "didn't have the laborers and he didn't have the time." Kvetko told plaintiff, "I don't care how you do it, you do it and get up there." Plaintiff did not work from the scaffold because it was not "where [Kvetko] wanted it." According to plaintiff, the hole had to be drilled from the roof rather than from under the soffit because "that's the way [defendant]

wanted it done." Prior to the accident, plaintiff accessed the roof by a scaffold, then walked to the area on the roof where he was to drill the hole. Plaintiff did not carry the drill, intending only to inspect the area to determine whether it was possible to drill the hole from the roof. Upon inspection, plaintiff determined that it was not safe because the roof was too wet. Plaintiff then slipped and fell from the roof. Plaintiff was not wearing a safety belt at the time of the accident, nor did he request any help or was help offered to him. Plaintiff did not use an extension ladder because the ground was too muddy, and he believed that the ladder would be shaky and unsafe at the required elevation. Plaintiff carried a hammer onto the roof, intending that if he slipped, he would "claw the hammer into the roof."

Kvetko testified at his deposition that he hired and "coordinated the contractors" for the construction of his new home, but that there was no general contractor. He went to the jobsite "irregularly," "sometimes three, four days [each week], sometimes every other day." He rented the unassembled scaffold from a company which delivered it to the jobsite; any contractor who needed the scaffold erected it. There was not enough to go around the whole building. Kvetko was not present when the accident occurred, nor did he go to the jobsite on December 27, 1984. While driving to Milwaukee, he received a telephone call on his car phone that someone had fallen from the roof. He immediately returned to the jobsite. When he arrived, Roger Allord, a plumber at the site, told him that he had advised plaintiff not to go onto the roof. Allord offered plaintiff a safety line, but plaintiff refused.

Ray Karnatz, Jr., a carpenter, testified that Kvetko was at the jobsite every day from "a couple of hours" to "all day long," coordinating the construction of his house. Karnatz stated that moving the scaffold was a "very time consuming process," which no one wanted to do because "it was the middle of winter and it was all frozen." Karnatz did not recall whether Kvetko was at the site on the day of the accident.

Robert Ryan, an electrician, testified that plaintiff supervised the electricians on the jobsite. He stated that there was no scaffold in the area where plaintiff needed to drill the hole at the time of the accident. Ryan took over the electrical work after plaintiff's injury, and when he eventually did the work, there was scaffold available in the area where the hole was drilled.

Allord stated that Kvetko was at the construction site every day, sometimes two or three times a day. Kvetko checked that everything went according to plan and gave Allord instructions in his work.

Defendants' motion for summary judgment argued that the Structural Work Act (Act) did not apply because: (1) plaintiff was a sole proprietor and, thus, "in charge" of the work; and (2) the roof from which plaintiff fell was not a "support" within the meaning of the Act. Defendants argued that even if the Act applied, they did not willfully violate the Act nor were they "in charge" of the work. The trial court granted summary judgment in favor of defendants on all counts, finding that plaintiff was not a "protected person" under the Act and that the roof was not being used as a "support" under the Act.

The Illinois Structural Work Act provides in relevant part as follows:

> "§1. That all scaffolds, *** erected or constructed by any person, firm or corporation in this State for the use in the erection *** of any house *** or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon ***." Ill Rev. Stat. 1985, ch. 48, par. 60.

> "§9. Any owner, contractor, sub-contractor, foreman or other person *having charge of the erection* *** of any building *** or other structure within the provisions of this act shall comply with all the terms thereof ***.
> * * *

> For any injury to person or property, occasioned by any wilful violations of this Act, or any wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby ***." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 48, par. 69.

Initially, we consider plaintiff's contention that the trial court improperly determined that plaintiff was a sole proprietor who was in charge of the work. The purpose of the Structural Work Act is to remove the fault of the employee as a defense and place the responsibility on the person in charge. (*Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, 190 N.E.2d 315.) In order to hold a defendant accountable under the Act, it must be determined that such defendant was in charge of the work. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946.) Mere ownership is insufficient to impose liability under the Act (*Coates v. W.W. Babcock Co.* (1990), 203 Ill. App. 3d 165, 560 N.E.2d 1099), and the title that a party holds is not necessarily determinative of whether it was in charge of the work. (*Norton v. Wilbur Waggoner Equipment Rental & Excavating*

*Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403; *Westerfield v. Arjack Co.* (1979), 78 Ill. App. 3d 137, 397 N.E.2d 451.) Rather, such determination rests upon an assessment of the totality of the circumstances (*Norton v. Wilbur Waggoner*, 76 Ill. 2d 481, 394 N.E.2d 403), and this court has set forth a number of relevant factors, including the following:

> "(1) supervision and control of the work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the jobsite; (6) authority to issue change orders; and (7) the right to stop the work. [Citations.] Other factors include: (8) ownership of the equipment used on the jobsite; (9) defendant's familiarity with construction customs and practices; and (10) whether defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. [Citation.]" (*Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6, 11, 445 N.E.2d 39, 42.)

(See also *Zukauskas v. Bruning* (1989), 179 Ill. App. 3d 657, 662, 680.) The question of whether one is in charge of the work is a question of fact that requires an evaluation of the totality of the circumstances. Ordinarily, this is a question for the jury, although summary judgment may be proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 514 N.E.2d 188.) The trial court's task on such motion is not to resolve a disputed factual issue, but rather to determine whether one exists. *Puttman*, 118 Ill. 2d 107, 514 N.E.2d 188.

We find *Westerfield v. Arjack Co.* instructive. In *Westerfield*, plaintiffs were injured when the platform of a material hoist on which they were riding fell to the ground. Plaintiffs sued Arjack, the general contractor of the construction project, and Arjack filed a third-party action for indemnity against plaintiffs' employer. The jury returned verdicts in both actions against Arjack. On appeal, this court rejected Arjack's contention that it was not in charge of the work, relying on the following facts: Arjack supervised the progress of the construction; Arjack's agents participated daily in the ongoing activities at the site; and Arjack had the right to issue a stop order if subcontractors did not perform adequately. Based upon these facts, this court determined that the evidence was sufficient to support the jury's conclusion that Arjack was in charge of the work. *Westerfield*, 78 Ill. App. 3d at 142, 397 N.E.2d at 456.

■ In this case, the undisputed evidence established that Kvetko owned the home, supervised the overall progress of the construction, and hired the subcontractors. Moreover, the testimony of plaintiff, Allord and Karnatz suggests that Kvetko controlled the manner and method of the subcontractors' work. Indeed, plaintiff testified that on the day of the accident Kvetko instructed him to install lights under the soffit and told him to finish the job on that day. According to plaintiff, Kvetko also stated, "I don't care how you do it, you do it and get up there." Such direction and comments by Kvetko, if true, belie his claim that he did not supervise plaintiff's work. Moreover, Kvetko's regular presence at the construction site suggests that he participated in the ongoing activities and was in charge of the work. As in *Westerfield*, Kvetko had the right to issue a stop order or fire a subcontractor if he so chose. Finally, the fact that Kvetko was not responsible for plaintiff's employees is not determinative. (See *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868.) Based upon the above evidence, we believe that a genuine issue of material fact existed as to whether Kvetko was in charge of the work so as to subject him to liability under the Act.

■ We are unpersuaded by defendants' argument that they were not in charge of the work because plaintiff was a sole proprietor, and not intended to be protected by the Act, and their reliance upon *Dean v. Talman Home Federal Savings & Loan Association* (1987), 163 Ill. App. 3d 800, 516 N.E.2d 951, and *Holley v. Badgerow* (1987), 162 Ill. App. 3d 572, 515 N.E.2d 1257. We find these cases inapposite here. In *Holley*, defendant-builder hired plaintiff as a subcontractor to rebuild a fireplace in a residence. Plaintiff hired a mason and a general laborer to assist him. Before starting the project, plaintiff and his assistant erected a scaffold; plaintiff owned the scaffold and all related materials. After working for about three weeks, plaintiff raised the scaffold to a higher level to facilitate the chimney work. The scaffold tipped over, and plaintiff and his assistant were injured. Plaintiff filed suit against the builder and the homeowner. The trial court granted defendants' motion for summary judgment finding that plaintiff was not a protected person within the meaning of the Act, and this court affirmed. In characterizing plaintiff as a "sole proprietor," this court focused upon the fact that plaintiff owned and erected the scaffold that caused his injuries. The court relied upon *Flora v. Home Federal Savings & Loan Association* (7th Cir. 1982), 685 F.2d 209, in which the court determined that a plaintiff, who was injured on a scaffold that he and his staff erected at the jobsite, was a sole proprietor. In *Dean v. Talman Home Federal*, plaintiff, a roofing contractor, con-

tracted with defendant to repair the roof of a home owned by defendant. Plaintiff was injured when a tree branch which hung over the roof struck him in the eye. This court rejected plaintiff's contention that defendant was in charge of the work, relying upon the factors set forth in *Chance v. City of Collinsville*. In *Dean*, defendant's agent visited the jobsite for a total of 10 minutes and had one conversation with plaintiff in which he inquired about the progress of the construction. Plaintiff used his own equipment and was not supervised by defendant. This court characterized defendant as a "mere owner of property upon which activity occurs, and not that of a party supervising a subcontractor's project." (*Dean*, 163 Ill. App. 3d at 803, 516 N.E.2d at 953-54.) Under these facts, the court concluded that plaintiff acted as a "sole proprietor" and was therefore in charge of the work performed and not protected under the Act.

Unlike the defendant in *Dean*, Kvetko visited the jobsite regularly. Indeed, Karnatz testified that Kvetko was there daily, and Kvetko himself admitted that he was at the site three or four times each week. Kvetko also admitted that he "coordinated" the subcontractors and had the power to fire them and to issue stop orders. Moreover, unlike *Holley* and *Flora*, plaintiff here did not own or erect the scaffold from which he fell. Rather, Kvetko rented the scaffold, and Kvetko's laborers erected the scaffold. These cases are thus distinguishable and do not require a contrary result.

We next consider plaintiff's contention that the trial court incorrectly determined that plaintiff's use of the roof did not constitute the use of a "support" within the meaning of the Act. Alternatively, plaintiff argues that defendants violated the Act by failing to provide a support device.

Our supreme court has repeatedly stated that the Act should be liberally construed to effectuate its purpose of protecting persons engaged in extrahazardous occupations or working in and about the construction, repair and alteration of buildings or other structures. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223; *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573.) However, the Act was not intended to cover all construction activities (*Vuletich v. United States Steel Corp.*, 117 Ill. 2d 417, 512 N.E.2d 1223), and certain things have been held not to be "supports" within the contemplation of the Act. See *Herman v. Swisher* (1983), 115 Ill. App. 3d 179, 450 N.E.2d 28.

In order to determine whether a device is a "support," we must ascertain the intended use of the device at the time of the injury. (*Vuletich v. United States Steel Corp.*, 117 Ill. 2d 417, 512 N.E.2d 1223.)

What is deemed a scaffold for purposes of the Act is not limited to the identity of the object claimed to be a support or scaffold. (*Smyrniotis v. Brockob Construction Co.* (1986), 142 Ill. App. 3d 340, 491 N.E.2d 1246.) Moreover, our courts have recognized that a roof, when temporarily used as a scaffold, is a device covered by the Act. *Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 370 N.E.2d 213; *St. John v. R.R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, 296 N.E.2d 740; *Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, 487 N.E.2d 1124.

In this case, plaintiff argues that the roof was defective in its use as a scaffold to support him as he installed the lighting under the soffit. Defendants do not dispute that under some circumstances a roof may function as a scaffold or support under the Act. They assert, however, that plaintiff did not use the roof as a "work platform," relying on *Bolsmo v. Mark V Roofing Co.* (1989), 190 Ill. App. 3d 334, 546 N.E.2d 634, and *Vuletich v. United States Steel Corp.* We find these cases distinguishable. In *Vuletich*, plaintiff fell from a set of temporary stairs leading to a tool storage trailer. Our supreme court rejected plaintiff's claim that the stairs functioned as a support under the Act, concluding that plaintiff intended to use the stairs as a pathway to the storage trailer, not as a working platform. As such, the Act did not apply. In *Bolsmo*, plaintiff, an electrician, ascended onto the roof of a building through a hatchway, intending to inspect an exhaust fan located on another section of the roof. As plaintiff stepped from the hatchway, he slipped and fell. Relying on *Vuletich*, this court held that the roof was not a support under the Act because plaintiff used the roof as a means of access to the exhaust fan, where he intended to work, not as a work platform. Unlike *Vuletich* and *Bolsmo*, at the time of plaintiff's injury in this case, he was not using the roof as a means to access his work location. Plaintiff accessed the roof, and then walked to the area on the roof where he needed to install the lighting. Plaintiff inspected the area and determined that he could not safely work on the roof because it was too wet. At this point, he fell. *Vuletich* and *Bolsmo* fail to support defendants' claim that plaintiff did not use the roof as a work platform.

We reject defendants' assertion that plaintiff's intention to first determine whether he could safely perform the work from the roof precluded a finding that plaintiff used the roof as a work platform. Plaintiff was directed to install lights, a structural activity under the Act as part of "the erection *** of any house." (Ill. Rev. Stat. 1985, ch. 48, par. 60.) A part of the job, however preliminary, involved determining the safest and most effective way to accomplish the func-

tion. We believe that at the time of his injury, plaintiff was engaged in a "hazardous task *** essential to [his] structural work activit[y]" of installing the lighting. (*Dubrovich v. Commonwealth Edison Co.* (1991), 209 Ill. App. 3d 498, 502, 568 N.E.2d 285, 288.) Moreover, plaintiff was in his "immediate work area." (*Dubrovich*, 209 Ill. App. 3d at 502, 568 N.E.2d at 288.) That plaintiff ascended onto the roof to inspect the location without his tools or drill does not preclude the roof from functioning as a "support" under the Act. We believe that plaintiff's activity at the time of his fall could constitute a protected structural work activity. Cf. *Long v. City of New Boston* (1982), 91 Ill. 2d 456, 440 N.E.2d 625.

We find *St. John v. R.R. Donnelly & Sons* and *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724, instructive on this issue. In *St. John*, our supreme court held that a roof used temporarily to support construction workers was properly considered a scaffold under the Act, even though it was a permanent part of the structure. In *Barenfanger*, plaintiff fell while working on steel girders that formed an integral part of the building under construction. Our supreme court stated that a permanent structure, such as a roof, which is used as a stay or temporary support, is not outside of the Act. (See also *Crothers v. La Salle Institute*, 68 Ill. 2d 399, 370 N.E.2d 213.) *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 1051, and *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 418 N.E.2d 1011, which each decided that a floor could be a support under the Act, are also persuasive. In *Urman*, this court stated, "[A] floor is not a scaffold when it is being used merely as a walkway [citations], but if a worker relies on a partially completed floor for support as a working platform, he may recover [citation]." (*Urman*, 101 Ill. App. 3d at 1093, 428 N.E.2d at 1057.) In *Quinn*, this court rejected plaintiff's claim that the floor constituted a "support" where plaintiff used the floor as a path to reach other parts of the structure.

■ Applying the rationale of these cases, we believe that the roof from which plaintiff fell could constitute a "support" under the Act. Plaintiff stated that he used the roof as a working platform in the absence of properly placed scaffold. Plaintiff was not using the roof as a pathway to reach another area when he fell. Rather, at the time of his fall, plaintiff stood on the roof at the location of the work to be performed. Our supreme court has stated that the "obvious hazard[ ] of a scaffold *** [is] that workmen or materials may fall off such device[ ]." (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 371, 325 N.E.2d 607, 612-13.) In our view, plaintiff's amended complaint and deposition set forth a hazard protected by the Act. For the above

reasons, we hold that the trial court's grant of summary judgment in favor of defendants was improper.

Defendants also maintain that the Act does not apply because plaintiff's voluntary act created the need for the support, citing *Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 545 N.E.2d 689, and *Swendsen v. Brighton Building & Maintenance Co.* (1976), 41 Ill. App. 3d 930, 355 N.E.2d 164. Neither of these cases, however, presents an analogous factual situation. Unlike *Delgatto* and *Swendsen*, plaintiff's amended complaint and deposition testimony suggest that he did not act voluntarily; rather, there was evidence indicating that Kvetko instructed him to go onto the roof and complete the job that day. In our view, Kvetko's denial that he so instructed plaintiff created an issue of triable fact for the jury. Nor do we believe, as defendants maintain, that the record established plaintiff had safe alternatives to working on the roof.

We also believe that a triable issue of fact existed as to whether defendants violated the Act by failing to provide a scaffold for plaintiff's use. It is well established that the Act may be violated by a failure to provide a needed scaffold, support, or other mechanical contrivance, as well as by providing a defective one. (*Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 545 N.E.2d 689; *Louis v. Barenfanger*, 39 Ill. 2d 445, 236 N.E.2d 724.) It is undisputed that Kvetko rented the scaffold and that his laborers erected the scaffold. The deposition testimony and plaintiff's amended complaint indicate that plaintiff asked Kvetko to move the scaffold, and that he refused, saying that he did not have the time or the staff. The evidence also suggests that moving the scaffold was a time-consuming, difficult process which required several people. Based upon this evidence, we believe that a triable issue of fact existed as to whether defendants' failure to move the scaffold for plaintiff's use was a violation of the Act.

For the above reasons, we conclude that the trial court erred in granting summary judgment for defendants as to counts I and II alleging violations of the Structural Work Act.

Finally, we consider plaintiff's argument that the trial court improperly granted defendants summary judgment on the negligence counts. A general contractor in control of the premises must provide subcontractors a safe place to work, and the failure to furnish a scaffold may be actionable under a common law negligence theory. (*Louis v. Barenfanger*, 39 Ill. 2d 445, 236 N.E.2d 724.) In light of our determination that a genuine issue of fact existed as to whether defendants were in charge of the construction and whether their failure to move the scaffold for plaintiff's use constituted a violation of the Structural

Work Act, we believe that an issue of fact also existed as to whether defendants' conduct constituted a failure to provide a scaffold actionable in negligence. As such, we reverse the summary judgment for defendants on counts III and IV.

For the reasons stated, the summary judgment for defendants on all counts is reversed, and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

Reversed and remanded.

EGAN, P.J., and RAKOWSKI,* J., concur.

━━━━━━━━━━

*Justice Rosemary LaPorta participated in oral argument prior to her death. Justice Thomas R. Rakowski was substituted on the panel and has listened to the oral argument tape and read the briefs.