JOHN E. MAHONEY, Plaintiff-Appellant, v. 223 ASSOCIATES *et al.*, Defendants (Aumiller Youngquist, Defendant-Appellee).

First District (5th Division)   No. 1—92—0761

Opinion filed March 26, 1993.

A. Denison Weaver, of Chicago, for appellant.

John J. Blasi and Harry N. Arger, both of Rooks, Pitts & Poust, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff John E. Mahoney (Mahoney) appeals from an order granting defendant Aumiller Youngquist, P.C. (Aumiller), summary judgment in an action brought pursuant to the Illinois Structural Work Act (the Act) (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.*). Mahoney, a painter who was injured while working on a construction project, contends that summary judgment was erroneously granted because a question of fact exists as to whether Aumiller, the architect for the project, was "in charge" of the work site within the meaning of the Act. For the following reasons, we affirm the judgment of the trial court.

On November 7, 1988, Mahoney was seriously injured when a bosun's chair he was sitting on collapsed and he fell to the ground from a height of several stories. At the time of this incident Mahoney was an employee of J.B. Noelle, a painting subcontractor hired by James McHugh Construction for a remodeling project at a building located at 223 West Jackson Boulevard in Chicago. The building was owned by 223 Associates, and the project was contracted for by Inter-Track Partners. Inter-Track Partners contracted with Aumiller, an architectural firm, for its services, which included providing drawings, specifications and designs for the remodeling project.

Subsequently, Mahoney filed suit to recover for injuries suffered, naming 223 Associates, Inter-Track Partners, James McHugh Construction and Aumiller as defendants. Mahoney alleged that these defendants violated provisions of the Illinois Structural Work Act and that such violations proximately caused his injury. Aumiller moved for summary judgment, contending that it was not in charge of the work site within the meaning of the Act. On February 10, 1992, the trial court granted Aumiller's motion, finding that, as a matter of law, the architect was not "in charge" of the work site as that term is interpreted under the Act. Mahoney appealed.

Although the matter still pends in the lower court as to the other defendants, jurisdiction is vested with this court as a result of the trial court's express finding that "there is no just reason for delaying enforcement or appeal." 134 Ill. 2d R. 304(a).

The sole issue presented to this court is whether the trial court erred in finding that, as a matter of law, Aumiller was not in charge of the work being performed at the remodeling project. Mahoney contends that an issue of fact exists as to the architect's status, which should have precluded the grant of summary judgment to Aumiller. Thus, Mahoney asks this court to reverse the judgment of the lower court and remand for further proceedings.

■ To determine the propriety of the trial court's ruling, we must interpret the pertinent provision of the Structural Work Act, which is section 9 of the Act. Section 9 provides:

"Any owner, contractor, sub-contractor, foreman or other person *having charge of* the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof ***.

* * *

For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby ***." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 48, par. 69.

Few phrases have generated as much litigation as the phrase "having charge of" within this Act. Our Illinois Supreme Court, referring to its decision in *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247, stated in *Emberton v. State Farm Mutual Auto Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348:

"The term 'having charge of' is a generic term of broad import, and although it may include supervision or control, it is not confined to it. As was said of the word 'charge' in *People. v. Gould*, 345 Ill. 288, 323[, 178 N.E. 133, 148]: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they

are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure." *Emberton*, 71 Ill. 2d at 117.

Several courts, in determining the meaning of "in charge" have listed factors to be considered when determining whether a party is in charge of the work pursuant to the Act. These are: (1) whether the party supervised or controlled the work; (2) whether the party retained the right to supervise or control the work; (3) whether the party participated in ongoing activities at the construction site; (4) whether the party supervised the subcontractors; (5) whether the party was responsible for safety onsite; (6) whether the party had authority to issue orders; and (7) whether the party had the right to stop work. The court may also consider whether the party owned the equipment used on the jobsite, was familiar with construction customs or practice and whether the party was in a position to alleviate equipment deficiencies or improper work habits. (*Koniarski v. Kvetko* (1992), 234 Ill. App. 3d 308, 313, 599 N.E.2d 1298; *Cutuk v. Hayes/ Gallardo, Inc.* (1991), 223 Ill. App. 3d 1097, 1100-01, 586 N.E.2d 357.) It is also well recognized that more than one entity may be deemed "in charge" within the meaning of the Act. (*Cutuk*, 223 Ill. App. 3d at 1100-01.) Nevertheless, a differentiating factor is whether the party to be held liable had a "direct connection" with the construction operation involved in the violation. See *Larson*, 33 Ill. 2d at 322-23, *Emberton*, 71 Ill. 2d at 119.

Generally, the question of whether one is in charge of the work requires an evaluation of the totality of the circumstances, thus making it a question of fact for the jury to resolve. However, summary judgment may be properly granted where the pleadings, depositions, admissions and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ill. Rev. Stat. 1989, ch. 110, par. 2—1005; *Stonitsch v. Laredo Construction Co.* (1991), 221 Ill. App. 3d 902, 583 N.E.2d 49.

In the present case Mahoney argues that the trial court improperly granted summary judgment to Aumiller. Mahoney points out that the deposition testimony of Kasprak, an employee of Aumiller, estab-

lished that the architect made regular (two to three times per week) visits to the jobsite, participated in weekly meetings, coordinated subcontractors and, through its contract, reserved the right to reject and stop work that did not conform to specifications. Mahoney concludes that, under these circumstances, a fact issue was created as to Aumiller's being "in charge" under the meaning of the Act.

Aumiller, on the other hand, relying on *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134, contends that no genuine issue of fact exists and summary judgment was properly granted because Kasparak's deposition testimony did not indicate that Aumiller had a direct connection with the operation which forms the basis for finding a violation under the Act.

We observe that the *McGovern* case was all but overruled by the *Emberton* case. Nevertheless, after considering the language of the statute, all of the case law interpreting the provisions of the Act and the evidence presented in this case, we must still conclude that the trial court did not err in granting Aumiller, the architect, summary judgment.

■ Although all of the cited case law falls short of defining what "having charge of" means, we do not believe that it should be interpreted to mean that liability must attach to every person or entity on a construction work site with some authority over the project. Rather, we believe that, in keeping with the statutory intent of protecting those involved in ultrahazardous work, liability may attach to any and all persons or entities who, because of their ownership of the faulty equipment, their knowledge of work practices or their duty to ensure the safety of the construction site, knew or should have known of the violation which gave rise to the cause of action. If the violation of the Act is something that might be deemed an open and obvious hazard so that even a lay person might be able to realize the unsafe condition, a party's regular access to the workplace may be sufficient to give rise to liability.

This interpretation of the statute seems only fair, since to hold otherwise would make nearly everyone connected to the construction project strictly liable for any and all injuries occurring during the course of the project. We do not feel that this was the intent of the legislature.

■ Applying the above-stated standard to the present set of circumstances, we find nothing in the briefs or the record which suggests that Aumiller had any knowledge of, or with reasonable care could have discovered, the hazardous condition that led to Mahoney's injury. Mahoney's injuries were related to his use of a bosun's chair.

There is absolutely no indication that Aumiller had any control over anyone's use of the bosun's chair, that Aumiller had a duty to inspect the equipment, that Aumiller was able to direct the manner in which Mahoney's work was to be performed or, for that matter, even select the color of the paint Mahoney was to use.

We realize that a trial court's function in cases of this nature is not to resolve a disputed factual question, but to determine whether one exists. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 514 N.E.2d 188.) However, from the record before this court we find that the trial court did not err in holding that Aumiller was entitled to judgment as a matter of law. Accordingly, we affirm.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.