THOMAS H. WARTENBERG, Plaintiff-Appellant, v. DUBIN, DUBIN AND MOUTOUSSAMY, Defendant-Appellee.

First District (4th Division)   No. 1—92—3655

Opinion filed February 24, 1994.

Block, Krockey, Cernugel & Cowgill, P.C., of Chicago (Michael D. Block, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, James M. Hoey, and Melinda S. Kollross, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Thomas H. Wartenberg (hereinafter Wartenberg), brought an action under the Structural Work Act (Ill. Rev. Stat. 1991, ch. 48, par. 69) in the circuit court of Cook County against defendant, the architectural firm of Dubin, Dubin and Moutoussamy (hereinafter Dubin), to recover damages for injuries he sustained while working on the Merchandise Mart "el" platform in Chicago.

Dubin filed a motion for summary judgment asserting that it was not in charge of the work and that it did not owe Wartenberg a duty of care. The trial court granted the motion, finding that Dubin was not in charge of the work and that neither a duty nor proximate cause existed.

On appeal, Wartenberg opines that the trial court erroneously granted Dubin's motion for summary judgment.

We affirm.

The record reveals the following pertinent facts. In 1982, construction commenced on a project called the Wells Street Viaduct and CTA Station Improvements (hereinafter the project). The Chicago Transit Authority (CTA) employed Envirodyne Engineers (hereinafter Envirodyne) as a design consultant to provide structural, civil, mechanical and electrical engineering services on the project.

In March 1983, at Envirodyne's request, Dubin submitted a proposal for architectural design services including a preliminary architectural design fee and a construction document consultation fee for "Phase II" of the project. The proposal did not include the preparation of construction documents.

In January 1985, Dubin submitted another proposal for the completion of the "Phase II" architectural services enumerating the maximum architectural cost estimates. In November 1985, Envirodyne authorized Dubin to commence the services required to complete the work.

In 1988, Dubin's field worker and staff architect, Richard Rucks, began visiting the construction site approximately once a week to "see how the work [Dubin] designed was going in place." Rucks made observations and submitted reports of any potential design problems to Envirodyne.

In November 1987, the general contractor employed by the CTA, Cameron-Meccor Joint Venture and/or Cameron Construction Company, subcontracted with Wartenberg's employer, Reliable Welding Company, to perform metal work on the project. In March 1989, Wartenberg injured his back while lifting a steel beam by rope from the street level to the "el" platform above.

Consequently, Wartenberg filed an action under the Structural Work Act against Dubin and other defendants, alleging that they were "in charge" of the work being performed at the work site and that they had a duty to provide proper equipment. Dubin moved for summary judgment. The trial court granted the motion on both counts, finding that Dubin did not control the work and was not involved in the actual construction of the project. The trial court also found that an architect's presence at a construction site does not, in itself, create an "in charge of" situation as contemplated by the Structural Work Act. Wartenberg appeals.

The sole issue of contention on review is whether the trial court's award of summary judgment in favor of Dubin was proper.

Wartenberg predicated recovery for his injuries on the Structural Work Act (hereinafter the Act) whose actionable language provides:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof ***.

* * *

For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby ***." (Ill. Rev. Stat. 1991, ch. 48, par. 69.)

A statutory duty, therefore, is only imposed if Dubin "ha[d] charge of" the construction work.

■ Factors often used to establish the requisite "having charge" element of the Act are whether a defendant (1) actually supervised or controlled the work; (2) retained the right to supervise or control the work; (3) took part in activities at the work site; (4) supervised subcontractors; (5) was responsible for on-site safety; (6) was authorized to issue orders; and (7) had the authority to stop work. (*Mahoney v. 223 Associates* (1993), 245 Ill. App. 3d 562, 565.) Supplemental to these considerations are whether the party owned the jobsite equipment, was familiar with construction customs and practices, and whether the party was situated so as to assure worker safety or to alleviate equipment deficiencies or improper work habits. *Mahoney*, 245 Ill. App. 3d at 565; see *Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6.

The record in this case patently evinces that none of these considerations characterizes the role of Dubin. Dubin's involvement in the project arose out of a series of letters exchanged between it and Envirodyne rather than a formal contract. It is necessary to examine the substance of these letters in order to ascertain the relationship between the parties and, more specifically, Dubin's relationship to the construction site.

In his deposition, John W. Moutoussamy, managing partner of Dubin, stated that he wrote a letter to Envirodyne proposing "preliminary design development drawings for an agreed on amount of money" for the project. Such documents form the basis for construction contracts. Dubin created the drawings and Envirodyne approved them.

Additional letters were exchanged between the parties which discussed architectural services, specifications and cost estimates. Dubin never agreed to participate in any phase of the actual construction or to supervise the jobsite direction of activities.

After construction began, Moutoussamy stated that Envirodyne asked Dubin to provide it with a "casual observation" service requiring an architect from Dubin to visit the site and "observe the construction for the purpose of determining [that] what is [on site] is generally in agreement with the documents." Dubin provided this service and Richard Rucks was assigned to visit the site. Through Rucks, Dubin advised Envirodyne if anything on site did not conform with the documents Dubin had prepared. The on-site contractors were never routinely advised by Dubin.

Moutoussamy also indicated that Dubin did not hire any personnel to work on the site. Further, Dubin neither had the authority to effect needed changes, nor did it have the authority to halt construction on the project if something was not in accordance with the requisite specifications.

Both Richard Rucks' deposition testimony and affidavit are substantially similar to the facts provided by Moutoussamy. However, Rucks additionally stated that he visited the construction site initially on a weekly basis for about 10 months and then on a monthly basis for the last four months at the end of the project. Rucks also testified that Dubin did not assume any control of the construction site safety procedures and did not attend any of the safety meetings regarding the construction.

Clearly Dubin, as consulting architect on the project, did not supervise, control or direct Wartenberg's manual lifting, by rope, of a steel pedestal from the street level to the platform which caused his injury. Rather, the record demonstrates that his employer, Reliable Welding Company, formulated this lifting procedure.

Dubin was not responsible for concocting construction methods and ideas; instead, it sent Rucks to visit the site approximately once every week. Rucks directed all necessary reports to Envirodyne. This was the extent of Dubin's jobsite involvement.

"Whether or not an architect has charge is determined not only from written contracts but also from the surrounding circumstances and from the role he in fact assumed." (*Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 1054.) A review of these circumstances, however, is unavailing to Wartenberg. After a careful review of the record in light of the formerly outlined principles, there is absolutely no evidence to support any assertion that Dubin was in charge of the construction site where Wartenberg was injured or that it controlled any aspect of his work environment.

Despite the above facts, Wartenberg argues that Dubin did undertake some responsibility which made it "in charge of" the work performed on the site. In furtherance of this position, Wartenberg

submits that Richard Rucks' chance observation of a construction problem on site and his bringing the problem to the attention of Reliable Welding demonstrate Dubin's participation in the work environment creating liability under the Act. We disagree.

The deposition of Rucks reveals that, on one occasion, he observed a problem with potential safety implications and, on his own and exceeding his designated responsibility, notified Reliable Welding of the problem. However, "[l]iability under the Structural Work Act is not automatically triggered when one who makes periodic site inspections for a limited purpose also has an incidental opportunity to observe unsafe conditions." (*Burger v. Prairie Development, Ltd.* (1991), 218 Ill. App. 3d 814, 821.) Thus, Rucks' observation, and his attempt to facilitate its correction, does not, in itself, constitute the "having charge of" relationship as contemplated by the Act.

■ In view of the limited and remote nature of Dubin's connection with the environment in which Wartenberg sustained his injury, we conclude that he has not satisfied the necessary "having charge of" aspect of the Act and his recovery thereunder is consequently precluded.

Relative to this issue, Wartenberg next posits that summary judgment was erroneously granted in favor of Dubin because a question of fact existed as to whether Dubin owed a duty to him. Wartenberg specifically asserts that Dubin breached its duties to provide proper equipment, to supervise his work, to provide him with a safe workplace, and to properly inspect and regulate the workplace.

It is axiomatic that the plaintiff in a negligence cause of action establish a duty, a breach of that duty, and an injury which was proximately caused from a breach of the duty. (*Grove v. City of Park Ridge* (1992), 240 Ill. App. 3d 659, 661.) Our threshold inquiry, therefore, is whether Dubin owed a duty to Wartenberg.

> "Whether a duty exists is a question of law to be determined by the court, and depends on whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff." *Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542.

The facts emanating from the record demonstrate that Wartenberg's injury was not related to either Dubin's job function or area of expertise. Further, we have previously determined that Dubin was not in charge of the equipment, the supervision of work, or the regulation or inspection of the workplace. Dubin did not control the on-site safety of the workers. The letters exchanged between Dubin and Envirodyne are devoid of evidence creating a duty on the part of

Dubin to Wartenberg and there is also no evidence of any direct relationship between Dubin and Reliable Welding.

An examination of the totality of the circumstances similarly establishes that Dubin and Wartenberg were not situated so as to create the legal obligation of a duty between them. Accordingly, as Wartenberg was unable to satisfy the integral duty element of his negligence cause of action, the claim fails.

"Summary judgment is proper where the pleadings, depositions, admissions of record, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." (*Kennedy v. Joseph Ryerson & Sons, Inc.* (1989), 182 Ill. App. 3d 914, 918.) We find that the trial court properly concluded that no genuine issue of material fact existed and its resultant grant of judgment as a matter of law in favor of Dubin was proper.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and HOFFMAN, J., concur.