NATHAN WILLIAMS, Adm'r of the Estate of Antar Williams, Plaintiff-Appellee, v. CHICAGO BOARD OF EDUCATION, Defendant-Appellant (John Costello, Defendant).

First District (1st Division)   No. 1—92—2853

Opinion filed October 24, 1994.—Rehearing denied November 30, 1994.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy J. Arnold, of counsel), for appellant.

Goldberg & Goldberg and David A. Novoselsky & Associates, both of Chicago (Barry D. Goldberg, David A. Novoselsky, and Linda A. Bryceland, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, the Chicago Board of Education (the Board), appeals a jury verdict against it in favor of plaintiff, Nathan Williams, administrator of the estate of Antar Williams, in this wrongful death action.

On February 6, 1985, Antar Williams drowned in a swimming pool at George Washington High School in Chicago. Plaintiff, Antar's father, filed this wrongful death action against the school's swimming instructor, John Costello,[1] and against the Board, alleging numerous grounds of recovery in several complaints. Most of these grounds were dismissed either prior to trial or by directed verdict in the Board's favor.

The case proceeded to trial on plaintiff's fourth amended complaint, which alleged the Board's and Costello's negligence and wilful and wanton conduct in ignoring both Antar's fear of the water and the fact that he could not swim; in failing to supervise Antar; and in allowing Antar to swim without a rope separating the deep and shallow ends of the pool. Only the last claim survived the Board's motion for directed verdict, and the trial court permitted Williams, after trial, to amend his pleadings to conform to the proof so as to state an additional claim that the Board was either negligent or

---

[1]The trial court directed a verdict for Costello at the close of plaintiff's case.

wilful and wanton in failing to inform Costello that State law required him to place a rope in the pool, separating shallow water from deep.[2]

According to plaintiff's theory of the case, the drowning occurred either during or after Antar participated in a swimming class with 32 other students, administered as part of the school curriculum. Under either theory, Antar was in the shallow end of the pool and began drifting into the deep end.[3] He was not a swimmer, and thus he was helpless because although the Board provided rope buoys to the school, on the day Antar drowned, the rope was not tethered across the pool where shallow water met deep.

During class, Antar had been practicing kicking and breathing in the shallow end of the Olympic-sized pool. The pool was of the type that slopes toward the deep end, which had a depth of 12 feet. The shallow end was five feet deep and under. Costello supervised the swimming by standing on the pool deck at the point where the bottom began sloping downward. He did not place the safety rope across the pool that day because all class activities were occurring in the shallow end. The students were doing kicking and breathing exercises by holding onto the troughs on the sides of the pool. Costello only used the rope when the students were swimming the width of the pool. He stated that not having the rope in place on the day of Antar's drowning constituted neither negligence nor gross negligence.

Alan Caskey, a park and recreation safety planner and consultant, testified that with the exception of competitive swimming meets, the life rope should be in place at all times, even if all students are confined to the shallow end of the pool. According to Caskey, failure to have the rope in place constituted a conscious disregard for the safety of the children using the pool. Caskey based his opinion in part on his interpretation of section 820.200(h)(i)(2) of the Illinois Department of Public Health Environmental Engineering Code,

---

[2]The trial court based this on an administrative regulation, section 820.200(h)(i)(2) of the Illinois Department of Public Health Engineering Code, which states:

"Whenever there is a transition point, devices for fastening safety ropes shall be installed at least one foot toward the shallow end of the pool from the transition point, and safety ropes and colored buoys shall be provided. Devices used for attaching the safety rope or racing line divider ropes shall be recessed. If no transition point is provided, the safety rope shall be installed where the water depth reaches five feet." 77 Ill. Adm. Code § 820.200(h)(i)(2) (1985).

[3]How this could have occurred is unclear to us. Plaintiff concedes that Antar was taller than the water was deep in the shallow end.

quoted above, though he conceded the section did not actually so state.

At some point after Antar's class ended, Costello found Antar's body at the bottom of the deep end of the pool, below the diving board. The record is unclear as to precisely how long after class this occurred. Costello believed that he had cleared all students from the pool although he did not conduct roll call after class was over. He had supervised three students in the deep end who were swimmers and made sure they were out of the pool. He also observed the students getting out of the shallow end of the pool. He spent some extra time with three other students in the shallow end, got them out, escorted them to the locker room, walked into the locker room to check on the students, returned to the pool and shut the doors. He started walking around the pool and noticed something at the bottom of the pool. He dove in and retrieved Antar.

There were several doors leading to the pool area. Caskey testified that State regulations in effect at the time required all doors leading to an indoor pool be self-latching, meaning that they locked when shut. (See 77 Ill. Adm. Code § 820.200(a)(2) (1985).) Although the doors to the pool were apparently not of this type, Costello testified that he locked all of the doors after class; however, several students had come back into the pool area after class, indicating that the doors might not have been locked or that the locks were broken. No one saw Antar get back into the pool; however, fellow students Daphne Scuggs and Joseph Flores saw Antar getting out of the pool. Scuggs recalled seeing Antar going into the boys' locker room; however, Flores did not see him there.

The Board issued a staff manual for swimming instructors; section V.C of the manual is entitled "Responsibilities." Subsection C(10) states "Provision of float guidelines (life lines) for deep water." Costello testified that the Board never provided him with a copy of this manual. Rather, he met with the other swimming staff to formulate swim class policy and procedures. Subsection C(1) of the manual states, as one of the responsibilities, "[E]stablishment of department routines for administration, supervision, and teaching of swimming."

The trial judge instructed the jury that it could find the Board liable if it found that the proximate cause of Antar's drowning was the Board's failure to install a safety rope separating the shallow from deep ends or its failure to advise Costello of the necessity to install such a rope. The trial judge also instructed the jury that it could find Antar comparatively negligent if he reentered the pool after he had been instructed to leave. The jury returned a verdict in

favor of Antar for $990,000, reduced on a finding that Antar was 10% comparatively negligent. Thus, the jury in this case apparently found that at the end of swimming class, Antar got out of the pool as instructed by Costello, proceeded to the locker room, returned to the pool, reentered it, and drowned.

Relying on this court's recent decision in *Brown v. Chicago Park District* (1991), 218 Ill. App. 3d 612, 578 N.E.2d 999, and our supreme court's decisions in *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654, and *Gebhardt v. Village of La Grange Park* (1933), 354 Ill. 234, 188 N.E. 372, the Board argues that it cannot be sued for injury arising out of its operation of a swimming pool. In *Brown*, this court reaffirmed the long-standing rule that when a municipality operates a swimming pool, it is operating the pool as a government function and, thus, is not liable for torts arising out of its operation unless it owes a "special duty" to the plaintiff. (*Brown*, 218 Ill. App. 3d at 616.) A student in a swimming class does not qualify as someone owed a special duty. *Brown*, 218 Ill. App. 3d at 617, quoting *Burdinie*, 139 Ill. 2d at 522.

Although at common law plaintiff's suit is barred, the trial court here permitted the case to go to the jury on the ground that the Board violated a duty imposed by statute—the administrative regulation set out earlier in this opinion. The trial court believed this regulation might impose a duty upon the Board to have a rope installed in the pool at all times. The trial judge conceded on the record that the regulation was vague. We note only that we find it difficult to interpret section 820.200(h)(i)(2) as mandating that a rope be in the water at all times. Clearly, by its terms, the regulation does not so state. Rather, it simply requires that a rope be provided. Logic dictates that those charged with the supervision of pools must retain discretion concerning when to use the rope. Otherwise, we would have to find that section 820.200(h)(i)(2) prohibits full-length swimming of any pool in the State of Illinois.

■ However, we need not reach a conclusion concerning interpretation of section 820.200(h)(i)(2) to decide this appeal. The regulation was authorized by the Swimming Pool and Bathing Beach Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, pars. 1201 through 1227). The purpose of that act is to provide "for the establishment and enforcement of minimum standards for safety, cleanliness and general sanitation for all swimming pools and public bathing beaches *** and to provide for inspection and licensing of all such facilities." (Ill. Rev. Stat. 1985, ch. 111½, par. 1202.) The Act also provides for penalties for violation of its provisions. (Ill. Rev. Stat. 1985, ch. 111½, par. 1222.) However, governmental units are exempted from monetary penalties. (Ill. Rev.

Stat. 1985, ch. 111$^1$/$_2$, par. 1223.) Section 13 of the Act, which authorizes the promulgation of administrative regulations governing the enforcement of the Act, provides no private right of action for violation of its terms. (Ill. Rev. Stat. 1985, ch. 111$^1$/$_2$, par. 1213.) Thus, although the Board's violation of a statute would ordinarily be probative of its conformance with a duty, under our decision in *Brown*, the Board owed no duty to Antar specifically, and the trial court should not have permitted this lawsuit to proceed on the ground that it failed to inform Costello that State law required a rope to be in the pool.

Even assuming that plaintiff could maintain this action on the grounds alleged, we would reverse the jury verdict in this case because Williams failed to establish any causal connection between the absence of the rope and Antar's drowning. The trial court denied the Board's motion for judgment *n.o.v.* asserting this ground. In reviewing a trial court's order denying a motion for judgment *n.o.v.*, this court reviews whether "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

The Board's challenge focuses on the requirement that a defendant's negligence or wilful and wanton conduct must have been the proximate cause of a plaintiff's injuries. (*Kellman v. Twin Orchard Country Club* (1990), 202 Ill. App. 3d 968, 560 N.E.2d 888, *appeal denied* (1991), 136 Ill. 2d 544, 567 N.E.2d 332.) Proximate cause is established only when "defendant's conduct is shown with reasonable certainty to have caused plaintiff's injury." (Emphasis omitted.) (*Wilson v. Bell Fuels, Inc.* (1991), 214 Ill. App. 3d 868, 874, 574 N.E.2d 200, *appeal denied* (1991), 141 Ill. 2d 562, 580 N.E.2d 137.) Although the question of proximate cause is normally one of fact for the jury, when the evidence is such that there could be no difference in the judgment of reasonable men as to the inferences to be drawn therefrom, proximate cause becomes a question of law. *O'Brien v. Hertl* (1992), 238 Ill. App. 3d 217, 221, 606 N.E.2d 225; *Bell Fuels*, 214 Ill. App. 3d at 874.

Both parties agree, as they must, that nobody saw Antar drown. Nobody saw him get back into the pool after swim class, although two classmates saw him get out, and Costello testified that he had cleared the pool. Under these circumstances, proof of causation is accomplished by inference—permissible under Illinois law. (*Truelsen v. Levin* (1974), 24 Ill. App. 3d 733, 321 N.E.2d 528.) However, when a party seeks to rely on circumstantial evidence to establish a fact, the

conclusion sought must be more than speculative; rather, the conclusion must be the only probable conclusion. *Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 545 N.E.2d 184; *Johnson v. Burlington Northern, Inc.* (1982), 107 Ill. App. 3d 130, 437 N.E.2d 334.

■ The only theory upon which Williams urges this court to affirm is the following. Antar Williams was afraid of water. Thus, he would only have entered the pool at the shallow end. He was too tall to drown in the shallow end, and, therefore, he inadvertently must have drifted into the area of the pool where it sloped downward. He began drowning as he entered the deep end, and because the safety rope was not attached to the pool, he had nothing to grab onto to save himself. We consider this scenario to be most speculative, particularly as it omits the possibility that Antar did not reenter the pool of his own accord, but might have slipped and fallen into the deep end. Even if he fell into the shallow end, he might have panicked and drowned there. He may have been pushed into the water. Given the paucity of evidence, it is entirely possible that the jury was simply incorrect in "concluding" that Antar drowned after reentering the pool.[4] On the evidence before us, we simply cannot conclude that a jury could find that the missing rope had any connection to Antar's tragic death.

Two recent decisions of this court are instructive in this regard. In *Tarulis v. Prassas* (1992), 236 Ill. App. 3d 56, 603 N.E.2d 13, *appeal denied* (1993), 149 Ill. 2d 661, 612 N.E.2d 524, this court reversed a jury verdict in favor of plaintiff on the ground that plaintiff had not established causation. The plaintiff was injured in a parking lot when he was hit by a car. He alleged negligence against the driver of the car, as well as against Prassas, the owner of the parking lot, claiming that Prassas failed to install properly placed and marked wheel stops in its driveway. The driver had testified that she had hit a wheel stop and lost control of her car, accelerating and then hitting the plaintiff at some other location on defendant's property. According to expert testimony, the purpose of wheel stops was to keep cars from jumping onto the sidewalk. The jury found Prassas 12% liable for plaintiff's injuries.

On appeal, Prassas argued that plaintiff had presented no evidence that the driver of the vehicle had hit the wheel stop as a result of her inability to see it. The court reversed the verdict against Pras-

---

[4]If Antar drowned during class, the Board would be immune from liability, as a matter of law, under section 3—108(b) of the Local Governmental and Governmental Employees Tort Immunity Act. Ill. Rev. Stat. 1985, ch. 85, par. 3—108(b).

sas, finding that, although the plaintiff had presented evidence as to whether Prassas had breached a duty toward her by maintaining improperly marked wheel stops, no evidence had been presented to link the breach of duty to the accident itself. *Tarulis*, 236 Ill. App. 3d at 64-65.

Although *Leavitt v. Farwell Tower Ltd. Partnership* (1993), 252 Ill. App. 3d 260, 625 N.E.2d 48, *appeal denied* (1994), 154 Ill. 2d 561, 631 N.E.2d 710, was disposed of in the trial court by summary judgment in favor of the defendant, this court applied the *Pedrick* standard to affirm on appeal because the plaintiff had presented all of her evidence before motions for summary judgment were filed.

In *Leavitt*, decedent was found at the bottom of an elevator shaft. As here, no one saw him getting into the elevator. Other tenants indicated that the elevator door on the second floor was standing open. The elevator cab was stuck between the second and third floors. A witness noticed mail addressed in the name of the decedent stacked near the elevator door on the second floor. There was only a four-foot drop from the first-floor landing to the pit of the elevator shaft. Plaintiff argued that it was reasonable to infer that decedent entered the shaft at the second-floor landing in the mistaken belief that the elevator was present. As here, the defendants in *Leavitt* argued that one could not infer from the evidence how the decedent came to die: "Defendants argue that decedent may have jumped into the elevator shaft, slipped into the elevator shaft, fallen while reaching into the shaft in an attempt to fix the elevator himself, run into the shaft or forced open the doors himself. Defendants maintain that there is no basis for selecting any of these scenarios as the most probable." (*Leavitt*, 252 Ill. App. 3d at 267-68.) We agreed, stressing that all of the scenarios presented to explain decedent's fate "rely on a chain of inferences," and "[a]lthough there is no rule against basing an inference upon another inference, at some point, the probative value of such inferences becomes so weak that they should not be permitted." *Leavitt*, 252 Ill. App. 3d at 268.

Here, the evidence suggesting that the presence of a rope in the swimming pool would have saved Antar is as speculative as that in *Leavitt*, as well as that in *Tarulis*, and for this reason, the verdict against the Board cannot stand.

Reversed.

CAMPBELL, P.J., and BUCKLEY, J., concur.