Janine KATONAH, et al., Plaintiffs,

v.

USAIR, INC., a corporation, The Boeing Company, a corporation, and Gerald E. Fox, Defendants.

No. 94 C 5539.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 15, 1995.

Donald J. Nolan, Law Offices of Donald J. Nolan, Chicago, IL, Richard F. Schaden, Schaden, Lampert & Lampert, Broomfield, CO, for Douglas Paul Alpern, Christopher Kafcas, Ramona Kinsey.

Michael M. Lane, Ann Paton Goodman, McCullough, Campbell & Lane, Chicago, IL, Dane B. Jaques, Mark A. Dombroff, Dombroff & Gilmore, Washington, DC, for USAir, Inc., a Del. Corp., USAir GRP Inc., a Corp., Gerald E. Fox, Timothy Molloy.

Allan Horwich, Frederick J. Sperling, Schiff, Hardin & Waite, Michael M. Lane, Ann Paton Goodman, McCullough, Campbell & Lane, Chicago, IL, Kevin Christian Osborn, Perkins Coie, Seattle, WA, Dane B. Jaques, Mark A. Dombroff, Dombroff & Gilmore, Washington, DC, for Boeing Co., a Del. Corp.

Philip H. Corboy, Michael Kelly Demetrio, David Casey Wise, Robert A. Clifford, Kevin P. Durkin, Corboy, Demetrio & Clifford, P.C., David A. Novoselsky, David A. Novoselsky & Associates, Chicago, IL, for Raffy Ardhaldjian, Sarah McCoy, Carole Griffin Ruzich, Brett Van Bortel.

**1.** Currently, there are twelve cases on the court's docket relating to this matter. All but one of the twelve cases were filed in the Cook County Circuit Court and were subsequently removed to the United States District Court. Case number 94 C 5539 was filed in this court; thus, the instant remand issue does not apply to her case. The other cases have been consolidated. Therefore, the court treats the related motions, those both written and orally made, to remand in this single opinion.

**2.** The following background is derived from the cases' dockets and the parties' pleadings and motions.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court are Plaintiffs' motions to remand their cases to the Circuit Court of Cook County, Illinois, where the cases were initially filed.[1] For the following reasons, the motions are granted.

### I. BACKGROUND [2]

All 132 passengers and crew of USAir's Flight 427 died on September 8, 1994, when the airplane crashed while *en route* from the Chicago O'Hare International Airport to the Greater Pittsburgh International Airport. Plaintiffs' cases arise from that tragedy naming as defendants USAir, Inc. ("USAir"), The Boeing Company ("Boeing"), Gerald E. Fox ("Fox"), and Tim Molloy ("Molloy").[3]

This is the court's second opinion concerning Flight 427. The court first encountered these matters in the context of a remand issue after USAir had removed three cases from the Circuit Court of Cook County, Illinois, to the United States District Court: *McCoy v. USAir*, No. 94 C 6295, *Ruzich v. USAir*, No. 94 C 6436, and *Van Bortel v. USAir*, No. 94 C 6437. These three cases were then reassigned to this court based on relatedness pursuant to Rule 2.31 of the Rules of the United States District Court for the Northern District of Illinois ("Local Rules").

In the process of considering the three removed cases, the court agreed to expedite the briefing schedule for the remand motions due to the upcoming meeting of the Multidistrict Litigation Panel ("MDL"). Before the court ruled on the remand issue, though, the

**3.** Tim Molloy is a named defendant in the *Kinsey*, No. 94 C 7175 and *Alpern*, No. 94 C 280 cases only. However, in an order Cook County Judge Boharic entered November 22, 1994, Molloy was voluntarily dismissed without prejudice from the *Kinsey* case. Molloy, an Illinois resident, is still a defendant in the *Alpern* case. Due to the court's findings as to Fox, the court need not address Molloy as he relates to the removal issue.

parties were allowed to conduct limited discovery to ascertain whether this court had subject matter jurisdiction. The court remanded the *McCoy, Ruzich,* and *Van Bortel* cases to the state court on November 17, 1994. *Katonah v. USAir,* 868 F.Supp. 1031 (N.D.Ill.1994). In that opinion, the court held that the allegations against Fox pertaining to his supervisory responsibilities failed to state a cause of action. As to Fox's direct personal liability, however, the court ruled it was possible an Illinois state court might find that Fox breached a cognizable duty. Furthermore, the court declined to adopt USAir's argument that federal aviation laws preempted state law causes of action. Therefore, the court concluded, Fox was not fraudulently joined and, consequently, his presence in the lawsuits destroyed diversity.

Since the issuance of the court's November opinion, the MDL has convened and ordered that all cases related to the Flight 427 crash be transferred to the Western District of Pennsylvania. Also, the National Transportation Safety Board published its "Operations Group Chairman's Factual Report," Docket Number SA–510, with various addenda ("Report"). A portion of the Report considered the origin of a noise heard by a passenger on the earlier leg of Flight 427 that was later communicated to Fox. As a result of the Report, USAir decided to remove, once again, the *McCoy, Ruzich,* and *Van Bortel* cases and, for the first time, remove eight other cases. The current case numbers for the eleven cases are as follows: *Ardhaldjian v. USAir,* No. 94 C 7085, *Bruckelmeyer v. USAir,* No. 94 C 7169, *Ruzich v. USAir,* No. 94 C 7170, *McCoy v. USAir,* No. 94 C 7171, *Van Bortel v. USAir,* No. 94 C 7174, *Kinsey v. USAir,* No. 94 C 7175, *Kafcas v. USAir,* No. 94 C 7298, *Lindstrom v. USAir,* No. 95 C 179, *McNamara v. USAir,* No. 95 C 180, *Evans v. USAir,* No. 95 C 181, *Alpern v. USAir,* No. 95 C 280. In this opinion, the court addresses the propriety of USAir's removal as to the eleven cases involved.

## II. DISCUSSION

As a fundamental consideration, the court addresses its jurisdiction. *Mansfield, Coldwater & Lake Michigan Railway Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884) ("[T]he first and fundamental question is that of jurisdiction.... This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."); *United States v. Smith,* 992 F.2d 98 (7th Cir.1993). The court notes that, at a minimum, it has jurisdiction to consider the issues raised as to all Flight 427 cases. Although the MDL has issued an order transferring all Flight 427 cases to the Western District of Pennsylvania for pretrial proceedings, the MDL order was constructed to be subject to the consent of the transferor court. MDL Transfer Order, Docket No. 1040, *In Re Air Crash Near Pittsburgh, Pennsylvania, on September 8, 1994* (filed Dec. 1, 1994) ("MDL Order"). Furthermore, concerning the Northern District, the MDL Order was limited to the one known case, *Katonah,* 94 C 5539. In a footnote, the MDL panel suggested it would consider the other related cases of which it was aware "as potential tag-along actions." *Id.* As such, this court sees fit that it address the issues surrounding the remand motions before it, rather than transferring the cases to the MDL.

### A. 28 U.S.C. § 1446(b)

The first issue is whether USAir may remove the *McCoy, Ruzich,* and *Van Bortel* cases a second time. The statue governing the procedure for removal is 28 U.S.C. § 1446. Subsection (b) is the specific language which controls the first issue here. The second sentence of subsection (b) provides as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable....

28 U.S.C. § 1446(b) (emphasis added). In its November opinion, the court found that the initial pleading was not removable and remanded the three cases back to state court. Yet the court noted that the law would allow the cases to be removed yet again if Fox were to be dismissed from the state actions

during the course of the state litigations. *Katonah v. USAir,* 868 F.Supp. at 1036 n. 5. Defendants did not attempt to have Fox dismissed from any of the state actions. Therefore, USAir may only remove the *McCoy, Ruzich,* and *Van Bortel* cases a second time if some "other paper" altered the status of the case.

The commentary following § 1446 discusses the phrase "other paper." 28 U.S.C.A. § 1446 note (Commentary on 1988 Revision of Section 1446 by David D. Siegel). "The paper that reveals the phoniness of the nondiverse defendant's joinder may be, e.g., the deposition of some nonparty witness." *Id.* Of the cases interpreting subsection (b), courts have allowed removal for such papers as a demand letter, *Central Iowa Agri–Sys. v. Old Heritage Advertising,* 727 F.Supp. 1304, 1305 (S.D.Iowa 1989), or a deposition, *Riggs v. Continental Baking Co.,* 678 F.Supp. 236, 238 (N.D.Cal.1988). However, cases allowing removal after the initial thirty days involved "other paper" which concretely resolved the diversity issue. In this case, the paper involved is the declaration of a nonparty witness, Captain William T. Jackson ("Captain Jackson"). Yet, the declaration only questions the issue of fact as to whether the noise reported to Fox was the cause of the crash. The declaration does not definitively establish that Fox was fraudulently joined. Nevertheless, this issue as to whether subsection (b) allows removal of *McCoy, Ruzich,* and *Van Bortel* on the basis of a non-party declaration need not be decided because, as discussed below, Captain Jackson's declaration does not alter the court's earlier conclusion that Plaintiffs might be able state a cause of action against Fox.

### B. Fraudulent Joinder

The issue, ultimately, before the court is whether Plaintiffs fraudulently joined Fox. " 'Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts.' " *Katonah v. USAir,* 868 F.Supp. 1031, 1034 (N.D.Ill.1994) (quoting *Hoosier Energy Rural Elec. Cooperative, Inc. v. Amoco Tax Leasing IV Corp.,* 34 F.3d 1310, 1315 (7th Cir.1994)). As mentioned above, the court already considered whether the doctrine of fraudulent joinder applied to these facts and decided that it did not. The court wrote that it was "hard pressed to conclude that there is no possibility that Fox had a cognizable duty to the passengers of Flight 427 which he might have breached." *Katonah v. USAir,* 868 F.Supp. at 1036. Since that time, Captain Jackson signed a declaration attempting to explain away an errant noise which an anonymous woman reported to Fox. Therefore, the court inquires as to whether Captain Jackson's submission warrants altering the court's earlier conclusion.

Again, Plaintiffs need only plead a cause of action which might survive a motion to dismiss in the state court. *Katonah v. USAir,* 868 F.Supp. at 1034. One of the various causes of action is a theory of negligence, Fox's negligence in particular. Therefore, in order to circumvent the doctrine of fraudulent joinder, Plaintiffs' complaints must have pleaded that Fox had a duty to the passengers of Flight 427 and that he breached that duty which was the proximate cause of the crash. *See, e.g., Wartenberg v. Dubin, Dubin & Moutoussamy,* 259 Ill.App.3d 89, 197 Ill.Dec. 47, 630 N.E.2d 1171 (1994).

The court continues in its resolve that an Illinois state court might find that Fox owed a duty to the passengers of Flight 427. The basic principle is that "negligence is the failure to take a level of precaution commensurate with the likelihood and magnitude of the risk created by the defendant's conduct." *Needham v. White Lab., Inc.,* 847 F.2d 355, 358–59 (7th Cir.1988). Duty is an essential element of negligence and is a question of law. *Homer v. Pabst Brewing Co.,* 806 F.2d 119, 121 (7th Cir.1986); *Barnes v. Washington,* 56 Ill.2d 22, 305 N.E.2d 535, 538 (1973); *Skyview Film & Video v. Safeco Life Ins. Co.,* 864 F.Supp. 755, 757 (N.D.Ill.1994). "The imposition of a duty is an act of judicial policymaking." *Homer,* 806 F.2d at 121. Factors a court considers in determining whether a duty of care exists include the reasonable foreseeability of injury, the likelihood of injury, the burden of guarding against injury, and the consequences of im-

posing that burden on the defendant. *Skyview Film & Video*, 864 F.Supp. at 757. Although the foreseeability element speaks to objectively reasonable results and not any result which might occur, *Watkins v. Mt. Carmel Public Utility Co.*, 165 Ill.App.3d 493, 116 Ill.Dec. 420, 424, 519 N.E.2d 10, 14 (1988), duty will not be decided on that element alone. Ultimately, "[i]n determining whether a duty exists, the trial court must consider whether a relationship existed between the parties which imposed a legal obligation upon one party for the other's benefit." *Landrum v. Gonzalez*, 257 Ill.App.3d 942, 196 Ill.Dec. 165, 168, 629 N.E.2d 710, 713 (1994).

This court does not take a position as to whether Fox had a duty to the passengers of Flight 427. This court does, however, take the position that it is possible that an Illinois court would find that a relationship existed between the parties which imposed a legal obligation upon Fox for the benefit of the passengers, i.e., that a state court would find a duty. The facts demonstrate that Fox received an anonymous call about an errant noise on a plane. The court does not agree with USAir that it was not reasonably foreseeable that an accident would occur following an account of an errant noise not noted by the pilot. Moreover, the court finds the other factors concerning the duty of care are in favor of imposing a duty on Fox; specifically, the potential extent of injury resulting from a crash was so great as to outweigh all the burdens or prevention. Therefore, this court finds that an Illinois court might determine that Fox had a duty to the passengers of Flight 427.

■ Alternatively, even if an Illinois court would not find that Fox initially owed a duty outright stemming from the nature of his position, the state court might determine that Fox had a duty under the voluntary undertaking theory. *See Decker v. Domino's Pizza, Inc.*, 268 Ill.App. 521, 205 Ill.Dec. 959, 644 N.E.2d 515 (Ct. Dec. 30, 1994); *Frye v. Medicare–Glaser Corp.*, 153 Ill.2d 26, 178 Ill.Dec. 763, 766, 605 N.E.2d 557, 560 (1992). In *Frye*, the Illinois Supreme Court cited the Second Restatement of Torts with approval:

> One who undertakes ... to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm....

Restatement (Second) of Torts § 323 (1965). The Report contained the following summary of Fox's undertakings:

> On September 8, 1994, Mr. Fox returned from a meeting in Pittsburgh and entered the maintenance office at O'Hare Airport for a brief stop before going home. At that moment, the telephone was ringing. No one else was in the office, so he answered the telephone. A woman, identifying herself as the wife of a passenger scheduled to fly on USAir Flight 427, states that she overheard passengers deplaning from USAir Flight 1181 (N513AU) discussing "noises" heard during the flight. Mr. Fox told her that two USAir mechanics were on duty, and if there were any maintenance matters, these would be fixed before the departure of the next flight.
>
> He did not see the two mechanics who were on duty, so Mr. Fox walked to the jetway and met Captain Germano. He asked the captain about the maintenance status of the airplane. The captain stated that there were no problems and everything was fine. After this conversation, Mr. Fox departed the airport for home. He had no other contacts with the female caller.

It is quite possible that a state court might find that Fox's assurance that any maintenance problems would be fixed before the flight's departure, his failure to speak with the two mechanics, and his venture to question the pilot constituted an undertaking to render a service, thereby imposing a duty upon himself. *Figueroa v. Evangelical Covenant Church*, 879 F.2d 1427 (7th Cir.1989) (stating that neither reliance nor an increased risk need be shown to meet the voluntary undertaking exception); *Decker*, 205 Ill.Dec. 959, 644 N.E.2d 515 (installing a security program to prevent criminal conduct

constituted voluntary undertaking); *Hernandez v. Rapid Bus Co.*, 267 Ill.App.3d 519, 204 Ill.Dec. 456, 641 N.E.2d 886 (1994) (holding that the bus company voluntarily undertook the duty to assure that students arrived safely from the bus to the school). In any event, be it due to the relationship he shared with the passengers as head mechanic or due to his voluntary undertaking, a state court might very well find that Fox owed a duty.

As to the elements of breach and proximate cause, they are normally questions of fact. *Williams v. Chicago Bd. Educ.*, 267 Ill.App.3d 446, 204 Ill.Dec. 863, 867, 642 N.E.2d 764, 768 (1994). The court recognizes that it considered facts in its prior opinion for the purpose of determining jurisdiction. *Katonah v. USAir*, 868 F.Supp. at 1035. The court does so here as well, again limited to the determination of jurisdiction. Looking to the Report which USAir submitted, it becomes clear that it does nothing more than raise an issue of fact. The Report purports to explain the origin of the noise which was reported to Fox:

> In person interview: Mr. Andrew McKenna occupied seat 1C on Flight 1181, from Charlotte to Chicago. He stated that he heard a noise, which he described as similar to "water gurgling, such as one would hear as water flowed from a sink into a drain." The sound came from the ceiling of the fuselage. He thought that he first heard it after the flight was in cruise, but he was not certain of this. He mentioned the noise to a female flight attendant, who listened to it and stated that it was a public address noise. He accepted this answer and ignored the noise. He could not recall how much longer it lasted, because he engaged himself in reading. Mr. McKenna did not discuss the noise with any other passenger, not did he hear other passengers mention the matter during or after the flight.

Although Captain Jackson's declaration is persuasive as to the explanation of the reported noise, it is in no way conclusive. Captain Jackson's declaration, in pertinent part, is as follows:

> During the Charlotte to O'Hare leg of the trip, I sat on the jumpseat in the cockpit since there were no seats left in the cabin. During the flight, I crossed my legs, apparently resting my leg against the public address microphone, keying the system.
>
> Some time thereafter, a flight attendant called Pete Germano on the intercom and reported that a passenger had brought her attention to an unusual sound in the cabin. The flight attendant apparently indicated to Pete that it sounded like the public address system.
>
> Pete turned around to me and pointed that my leg was keying the public address system. I apologized and moved my leg.
>
> Thereafter, there were no reports of anything from the flight attendant.

The fact that the pilots did not receive another complaint after Captain Jackson moved his leg does not necessitate the finding that Captain Jackson caused the reported noise. For instance, there may have been more than one noise—especially considering McKenna's description of the noise he had heard. McKenna recounted that the noise he heard was similar to "water gurgling, such as one would hear as water flowed from a sink into a drain." A trier of fact may find, based on common experience, that a faulty public address system does not sound similar to the sound of gurgling water. In essence, a trier of fact would weigh Captain Jackson's submission regarding the position of his leg against (1) McKenna's conclusion that an errant noise was not from the public address system and (2) the fact that the tragedy of Flight 427 remains a mystery. It cannot be said that, as a matter of law, the Report conclusively addresses the issues of breach and proximate cause.

This court will not weigh the facts beyond ascertaining whether it possesses subject matter jurisdiction. Again, the burden is on the defendant to persuade the court. "The defendant must show that, after resolving all issues of fact and law in favor or the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos*

*v. NAAS. Foods, Inc.,* 959 F.2d 69 (7th Cir. 1992). The Report does not alter the court's conclusion as to the propriety of removal. The court holds fast to its position that Plaintiffs' count against Fox might survive a motion to dismiss in an Illinois state court. Accordingly, the court, for a second time, holds that Fox was not fraudulently joined.

### C. 28 U.S.C. § 1447(c)

■■■ As part of their motion to remand, Plaintiffs requested costs, expenses, and attorney fees pursuant to § 1447(c).[4] Subsection (c) provides, "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award of fees and costs pursuant to the plain language of this subsection is discretionary. *See IMCO USA, Inc. v. Title Ins. Co. of Minn.,* 729 F.Supp. 1322, 1324 (M.D.Fla.1990). Yet the subsection does not indicate how the court should exercise its discretion. The commentary to subsection (c) suggests a court may impose fees and expenses "should it find that it was improper for the defendant to remove the case. The matter is left to the court's discretion, to be exercised based on the nature of the removal and the nature of the remand." 28 U.S.C. § 1447 note (Commentary on the 1988 Revisions by David D. Siegel). The presence or absence of good faith is not the standard for determining whether costs should be awarded. *Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993); *Moore v. Permanente Medical Group, Inc.,* 981 F.2d 443, 446 (9th Cir.1992); *Morgan Guaranty Trust Co. v. Republic of Palau,* 971 F.2d 917, 923–24 (2d Cir.1992); *Scialo v. Scala Packing Co.,* 821 F.Supp. 1276, 1278 (N.D.Ill.1993). Rather, "the propriety of a defendant's removal [is the critical element] in determining whether to impose fees." *Miranti,* 3 F.3d at 928. In ascertaining whether to impose fees, it should be noted than a cause of action "must not ricochet back and forth depending upon the most recent determination of a federal court." *City of Valparaiso, Ind. v. Iron Workers Local 395,* 118 F.R.D. 466, 468

(N.D.Ind.1987) (quoting *In Re Providencia Dev. Corp.,* 406 F.2d 251, 252–53 (1st Cir. 1969)). One factor to consider in assessing the propriety of removal is the complexity of the case. *American Inmate Phone Sys., Inc. v. US Sprint Communications Co.,* 787 F.Supp. 852, 859 (N.D.Ill.1992) (holding that imposition of costs and fees was not proper where issues were complex).

In the case *sub judice,* USAir chose to remove cases after the court had already ruled on the substantive aspect of this matter. As noted above, Defendants' position is that the posture of the cases was altered with the issuance of the Report which, they argue, settles the issue of whether an errant noise was related to the disaster of Flight 427. However, Defendants' confidence in the conclusiveness of the Report is suspect in light of their reluctance to file a motion to dismiss Defendant Fox in the Illinois state court proceedings. Such a filing would have had the effect of deciding the underlying issue of whether a state court would dismiss Fox. Nevertheless, due to the numerous Plaintiffs and Defendants, the court is not inclined to further clog this court, or any other, with disputes about the extent of costs and attorney fees at this time.

However, there is precedent in this District to levy costs and fees after a case is remanded back to state court for lack of subject matter jurisdiction. *M.D.C. Wallcoverings v. State Bank of Woodstock,* 771 F.Supp. 242, 244 (N.D.Ill.1991) (citing *Faust v. Pennsylvania Dep't of Revenue,* 1990 WL 11674 (E.D.Pa. Feb. 8, 1990) and *Unanue Casal v. Unanue Casal,* 132 F.R.D. 146, 150 (D.N.J.1989)). The court in *M.D.C. Wallcoverings* reviewed the legislative history and reasoned that Congress intended to allow District Courts the jurisdiction to levy fines after a case is remanded. In that case, the court remanded the matter in September 1990 and assessed fees and costs in February 1991. Accordingly, the court takes Plaintiffs' motion for costs, expenses, and attorney fees under advisement.

---

4. The court recognizes that § 1446(a) requires the notice of removal be signed pursuant to Rule 11 of the Federal Rules of Civil Procedure; as such, that section may afford aggrieved parties another avenue for recovering fees. Nevertheless, since the court finds that Rule 11 is not warranted at this juncture, the discussion is limited to § 1447(c).

### D. Federal Preemption

The final argument which USAir raises is that Plaintiffs' claims are preempted by 49 U.S.C. app. § 1305[5] and, as such, are removable pursuant to 28 U.S.C. § 1441(b). This is the same argument the court dismissed in footnote four of its November opinion. *Katonah v. USAir*, 868 F.Supp. at 1033–34 n. 4. In that opinion it was explained, "Although USAir devotes 18 pages of thoughtful argument to support the proposition that the doctrine of federal preemption (or complete preemption) applies, the court is not persuaded." *Id.* The court reiterates that, although USAir devotes two and a half pages of thoughtful new argument to support the same proposition, it is still not persuaded.

USAir submits that *O'Hern v. Delta Airlines, Inc.*, 838 F.Supp. 1264 (N.D.Ill.1993) misinterpreted the Supreme Court decision of *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). They argue that the Federal Aviation Program preempts state law claims because the state claims relate to airline services. This court recognizes that adverse awards may encourage airlines to alter policies relating to services; however, that fact does not mean that state tort law "relates to" airline "services" as Congress contemplated. Had Congress wished to preempt state law tort causes of action that relate to airline safety, it could have done so expressly. Such preemption would more likely come about from clank than silence, and after full debate in a public forum. "[T]he court will not accept USAir's invitation, under the guise of federal preemption, to both forgive the absence of established diversity requirements and dismiss all state law causes of action." *Katonah v. USAir*, 868 F.Supp. at 1033–34 n. 4. The court is persuaded by the *O'Hern* decision as well as many other courts which have declined to follow USAir's solicitation to preempt state law tort claims. Accordingly, the court holds that federal law does not preempt the state law claims involved in the lawsuits before this court.

### CONCLUSION

For the foregoing reasons, the court grants Plaintiffs' motions to remand their cases to the Circuit Court of Cook County, Illinois.

IT IS SO ORDERED.

---

**5.** The parties mis-cite the law in their briefs. Congress repealed § 1305 on July 5, 1994. Pub.L. No. 103–272, § 7(b), 108 Stat. 1379. The new section is 49 U.S.C. § 41713 and is entitled "Preemption of authority over prices, routes, and service."